Filed 1/7/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| O'GARA COACH COMPANY, LLC, <br><br> Cross-complainant and Appellant, <br><br> v. <br><br> JOSEPH RA, <br><br> Cross-defendant and Respondent. | B286730 <br><br> (Los Angeles County Super. Ct. No. SC125609) |

APPEAL from an order of the Superior Court of Los Angeles County, Gerald Rosenberg, Judge. Reversed and remanded.

Brown, Neri, Smith & Khan, Ethan J. Brown, Rowennakete P. Barnes and James F. Warren IV for Joseph Ra.

Greines, Martin, Stein & Richland, Marc J. Poster and Jonathan H. Eisenman for O'Gara Coach Company, LLC.

_____

Darren Richie, the former president and chief operating officer of O'Gara Coach Company, LLC, is a principal of Richie Litigation, P.C.  O'Gara Coach moved to disqualify Richie Litigation from representing its former senior executive Joseph Ra in litigation, including cross-actions between O'Gara Coach and Ra, arising from allegations by Marcelo Caraveo that O'Gara Coach and Ra had committed fraud in connection with Caraveo's acquisition of luxury vehicles from O'Gara Coach.  In support of its motion O'Gara Coach relied on evidence that, while president of O'Gara Coach, Richie had been a client contact for outside counsel investigating the charges of fraudulent conduct that ultimately led to Caraveo's lawsuit.  The trial court denied the motion.  We reverse.

**FACTUAL AND PROCEDURAL BACKGROUND**

1.  *Caraveo's Lawsuit, Ra's Cross-complaint and O'Gara's Cross-complaint*

In March 2016 Caraveo and two related limited liability companies filed a complaint, and in June 2016 a first amended complaint, against O'Gara Coach, Ra and several other entities asserting causes of action for fraud, conversion and unfair business practices based on their allegedly wrongful conduct with respect to Caraveo's acquisition of luxury vehicles from O'Gara Coach.

In October 2016 Ra filed a cross-complaint for defamation, intentional interference with contractual relations and indemnity against O'Gara Coach, its principal owner and chief executive officer Thomas O'Gara and various other individuals.  Ra claimed O'Gara Coach was obligated to indemnify him because the allegations in Caraveo's complaint arose from his actions as an employee of the company.  As for his tort claims, Ra alleged, in

2

part, that shortly after he was forced to resign from his position with O'Gara Coach in early 2016, the cross-defendants "all repeated the same thing: that Ra stole vehicles, stole money from O'Gara Coach, improperly rented O'Gara Coach's cars and stole the revenues from those rentals, and committed other criminal acts that resulted in both the Federal Bureau of Investigation and the Los Angeles District Attorney in search of Ra for prosecution."

In January 2017 O'Gara Coach filed its own cross-complaint, and on March 27, 2017 a first amended cross-complaint, against Caraveo, Ra, Thomas Wu, another former employee of O'Gara Coach, and others for breach of contract, fraud and related torts, and as to Ra and Wu for breach of fiduciary duties arising from employment. O'Gara Coach's cross-complaint alleged that Caraveo and Ra were the primary architects of a multi-pronged fraudulent scheme involving the sale, leasing and financing of vehicles from unsuspecting automobile dealerships.

2. *Richie's Role at O'Gara Coach*

O'Gara Coach hired Richie in September 2013 as general manager for its Westlake Village location. He was subsequently promoted to director of sales operations for the company and then in November 2014 to president and chief operating officer.

In his declaration in support of O'Gara Coach's motion to disqualify Richie Litigation, Thomas O'Gara stated O'Gara Coach does not employ in-house lawyers and, while serving as president, Richie was a primary point of contact for the company's outside counsel on many legal matters: "Mr. Richie would regularly engage and direct legal counsel on O'Gara Coach's behalf, regarding day-to-day advice on a litany of

3

subjects, the development and implementation of policies and procedures, and on all aspects of pending litigation, and pre and post-litigation functions."

When Richie was initially hired by the company, Thomas O'Gara knew Richie had graduated from law school and had experience overseeing legal matters. (Richie graduated from law school in 2003.) According to O'Gara, it was this "legal education and professed experience that provided me comfort in assigning to him decision-making authority during his tenure, including without limitation engaging outside legal counsel and overseeing (on a companywide basis) all legal matters affecting the company."

Richie's employment with O'Gara Coach was terminated on February 2016. In his declaration Thomas O'Gara states O'Gara Coach and Richie executed a severance agreement in which Richie agreed not to file claims against O'Gara Coach or to assist others in bringing claims against the company. That document, which is described as subject to confidentiality provisions, was not filed with the trial court, but counsel offered to make it available to the court for in camera inspection.[1]

---

[1] As part of a request for judicial notice in this court, O'Gara Coach included a copy of the complaint for injunctive and equitable relief (misappropriation of trade secrets and breach of contract) it had filed against Richie in Los Angeles Superior Court on November 13, 2017 (L.A.S.C. no. BC683108). That pleading quoted portions of the parties' severance agreement including Paragraph 9(B): "Obligation Not to Cooperate. Employee and Employer agree that they will not counsel or assist any attorneys or clients in the presentation or prosecution of any disputes and/or differences by any third party against Employee or Released Parties unless pursuant to a lawfully issued

### 3. *Ra's Retention of Richie Litigation; Richie's Admission to the California Bar*

When he filed his answer to Caraveo's first amended complaint and his own cross-complaint in October 2016, Ra was represented by Ethan J. Brown of the law firm of Brown Neri Smith & Khan LLP.

Richie sat for the California bar examination in February 2017.  On May 19, 2107 Richie filed articles of incorporation of a professional corporation for Richie Litigation, P.C. with the California Secretary of State.  A statement of information for Richie Litigation, P.C. filed on June 26, 2017 with the Secretary of State identified Robert K. Lu as the sole officer and director, as well as the agent for service of process of the professional corporation.  Richie was admitted to the State Bar in August 2017.  A new statement of information for Richie Litigation, P.C., filed on September 13, 2017 with the Secretary of State, identified Richie as the sole officer, director and agent for service of process for the professional corporation.[2]

---

subpoena or other order by a court or agency of competent jurisdiction, or in response to an official inquiry of a governmental agency."

[2]    O'Gara Coach's May 16, 2018 request for judicial notice, which includes the three documents filed with the Secretary of State identified in this paragraph, as well as O'Gara Coach's complaint against Richie for misappropriation of trade secrets and breach of contract, is granted.  The court also grants Ra's June 15, 2018 request for judicial notice of Richie's cross-complaint against O'Gara Coach in LASC no. BC683608 for wrongful termination, breach of contract and fraud.  O'Gara Coach's supplemental request for judicial notice, filed December 11, 2018, is denied as unnecessary.

5

On June 8, 2017, two months before Richie was admitted to practice in California, Robert Lu of Richie Litigation substituted for Ethan J. Brown as counsel of record for defendant and cross-complainant Ra in this lawsuit. Richie Litigation also appeared as counsel for Jorge Loera and Thomas Wu, two other former O'Gara Coach employees, in lawsuits they filed against O'Gara Coach.

4. *The Motion To Disqualify Richie Litigation*

On October 11, 2017 O'Gara Coach moved to disqualify Richie Litigation. O'Gara Coach asserted, even though Richie was not a member of the California bar while serving as president and chief operating officer of the company, given his role in coordinating legal matters for O'Gara Coach, including interfacing with outside counsel, the court should apply the rule requiring disqualification of attorneys representing adverse parties in successive representations when, as here, the matters are substantially related, as well as the rule that, when a former client's confidential information is known to any attorney at a law firm, the entire firm must be disqualified. O'Gara alternatively argued, even if no attorney-client relationship existed between Richie and O'Gara Coach, Richie Litigation should be disqualified because Richie was privy to the company's privileged information while employed as one of its most senior executives. As such, whether or not Richie has a continuing fiduciary obligation to O'Gara Coach, Richie Litigation is not entitled to exploit that information in litigation adverse to the company.

In support of its motion O'Gara Coach submitted the declaration of Halbert Rasmussen, who was a partner at the Arent Fox law firm when Richie was president of O'Gara Coach.

6

Rasmussen stated he had regularly communicated with Richie in the course of his representation of O'Gara Coach "in various legal matters, as did other attorneys at Arent Fox LLP who were assisting me with the representation of O'Gara Coach." In January 2016 Rasmussen and his firm were retained to conduct an internal investigation concerning the activities of Joseph Ra and Thomas Wu. In the course of the investigation, Rasmussen explained, he sent attorney-client communications and attorney work product to Richie through email, included Richie in phone calls and meetings during which attorney-client communications pertaining to the investigation occurred and sought Richie's assistance in discovering the nature of Ra's and Wu's activities and "his view on the propriety of their conduct." According to Rasmussen, the internal investigation uncovered facts used as the basis for O'Gara Coach's cross-claims in this action and developed legal issues that "greatly informed O'Gara Coach's strategy in defending the claims filed against it, and prosecuting the cross-claims in the above captioned action."

O'Gara Coach's motion papers also included declarations from Keith D. Kassan, who acted as outside general counsel to O'Gara Coach, and Usama Kahf of Fisher & Phillips LLP, O'Gara Coach's labor and employment counsel. Both men described interacting with Richie on legal matters, both litigation and nonlitigation, on an ongoing basis while he was president of O'Gara Coach.

In his opposition to the motion to disqualify, Ra argued the case law regarding successive representation was inapplicable because Richie had never been an attorney while an executive of O'Gara Coach and no attorney-client relationship existed between him and the company, either while he was employed by

O'Gara Coach or afterward when he became a licensed attorney. Ra also argued, even if Richie owed a continuing fiduciary duty to O'Gara Coach, a non-lawyer's fiduciary obligation to an employer or former employer is different from a lawyer's and cannot provide the basis for disqualifying a law firm with which that individual becomes affiliated. The opposition papers included a brief declaration from Richie establishing the basic facts regarding the timing of his employment at O'Gara Coach and his subsequent admission to the California State Bar. Richie stated he had never acted as legal counsel for O'Gara Coach or its principal Thomas O'Gara, either while employed by the company or afterward. However, Richie did not deny he had participated in discussions and received communications protected by the lawyer-client privilege while an executive at O'Gara Coach. Ra presented no evidence indicating Richie Litigation had established any internal screening procedures or "ethical walls" between Richie and the attorneys at Richie Litigation representing Ra.

The trial court denied the motion on November 14, 2017 after hearing argument from the parties. Adopting its tentative ruling as its final order, the court explained that O'Gara Coach had failed to establish there was an attorney-client relationship between it and Richie. "The fact that he might have received confidential information about O'Gara [while he] was employed there is not enough." The court also stated, "There is no authority cited to disqualify a former employee who then becomes an attorney."

8

## DISCUSSION

1. *Standard of Review*

A trial court's decision to grant or deny a motion to disqualify counsel is generally reviewed for abuse of discretion. (*People v. Suff* (2014) 58 Cal.4th 1013, 1038; *In re Charlisse C.* (2008) 45 Cal.4th 145, 159 (*Charlisse C.*); *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143 (*SpeeDee Oil*).) "As to disputed factual issues, a reviewing court's role is simply to determine whether substantial evidence supports the trial court's findings of fact . . . . As to the trial court's conclusions of law, however, review is de novo; a disposition that rests on an error of law constitutes an abuse of discretion." (*Charlisse C.*, at p. 159; see *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.) While the trial court's "'application of the law to the facts is reversible only if arbitrary and capricious'" (*Charlisse C.*, at p. 159), "where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law." (*SpeeDee Oil*, at p. 1144; accord, *California Self-Insurers' Security Fund v. Superior Court* (2018) 19 Cal.App.5th 1065, 1071; *Castaneda v. Superior Court* (2015) 237 Cal.App.4th 1434, 1443.)

When deciding a motion to disqualify counsel, "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1145; see *Clark v. Superior Court* (2011) 196 Cal.App.4th 37, 47-48.)

9

2. *Governing Law*

    a. *Protecting client confidences: disqualification based on successive representation*

It is well-established that an attorney, after severing his or her relationship with a client, "may not do anything which will injuriously affect his former client in any manner in which he formerly represented him nor may he at any time use against his former client knowledge or information acquired by virtue of the previous relationship." (*Wutchumna Water Co. v. Bailey* (1932) 216 Cal. 564, 573-574; accord, *People ex rel Deukmejian v. Brown* (1981) 29 Cal.3d 150, 155; *Fiduciary Trust Internat. of California v. Superior Court* (2013) 218 Cal.App.4th 465, 485.) This prohibition is grounded in both the California State Bar Rules of Professional Conduct—rule 3-310(E) in effect until November 1, 2018, and rule 1.9, effective November 1, 2018—and governing case law. (See *City National Bank v. Adams* (2002) 96 Cal.App.4th 315, 323-324.)

The disqualification standards applicable in these cases of successive representation "focus on the former client's interest 'in ensuring the permanent confidentiality of matters disclosed to the attorney in the course of the prior representation.'" (*Charlisse C.*, *supra*, 45 Cal.4th at pp. 159-160; see *Neal v. Health Net, Inc.* (2002) 100 Cal.App.4th 831, 840 ["at the core of California's disqualification jurisprudence is a concern for the confidentiality of lawyer-client communications"].) Disqualification is required if the current representation involves the legal services performed by the attorney for the former client (e.g., *Henriksen v. Great American Savings & Loan* (1992) 11 Cal.App.4th 109, 111; *Dill v. Superior Court* (1984) 158 Cal.App.3d 301, 306) or, even if not the same matter, if a substantial relationship exists between the former representation

10

and the current representation (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1146 ["[w]here an attorney successively represents clients with adverse interests, and where the subjects of the two representations are substantially related, the need to protect the first client's confidential information requires that the attorney be disqualified from the second representation"]; *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283 ["[w]here the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory"]; *M'Guinness v. Johnson* (2015) 243 Cal.App.4th 602, 614).

Through the doctrine of vicarious disqualification, the Supreme Court has extended the rules developed to protect a former client's confidences to include the disqualified attorney's entire law firm:  "'The rule of vicarious disqualification is based upon the doctrine of imputed knowledge,' which posits that the knowledge of one attorney in a law firm is the knowledge of all attorneys in the firm.  [Citation.]  By 'recogniz[ing] the every day reality that attorneys, working together and practicing law in a professional association, share each other's, and their clients', confidential information' [citation], the vicarious disqualification rule 'safeguards clients' legitimate expectations that their attorneys will protect client confidences.'"  (*Charlisse C.*, *supra*, 45 Cal.4th at p. 161; accord, *SpeeDee Oil*, *supra*, 20 Cal.4th at pp. 1153-1154; see *Kirk v. First American Title Ins. Co.* (2010) 183 Cal.App.4th 776, 800-801 [although the presumption that knowledge of a client's confidences should be imputed to all

11

members of a tainted attorney's law firm might be refuted by evidence that ethical screening will effectively prevent the sharing of confidences in a particular case, "vicarious disqualification should be automatic in cases of a tainted attorney possessing actual confidential information from a representation, who switches sides in the same case"]; see also *Castaneda v. Superior Court, supra,* 237 Cal.App.4th at p. 1449 ["no ethical wall could overcome the imputation of shared knowledge when an attorney who formerly represented—and therefore possessed confidential information regarding—a party switched sides in the *same* case"].)

> b. *Protecting client confidences: disqualification based on the acquisition of an adversary's privileged communications by means other than a prior attorney-client relationship*

Attorney disqualification to support the fundamental principle of protecting client confidences is not limited to situations in which an adversary's privileged communications have been acquired through a prior attorney-client relationship: "A law firm that hires a nonlawyer who possesses an adversary's confidences creates a situation, similar to hiring an adversary's attorney, which suggests that confidential information is at risk." (*In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 593 (*Complex Asbestos*).)

In *Complex Asbestos, supra*, 232 Cal.App.3d 572 the court of appeal held disqualification was proper because counsel's newly hired paralegal had access to confidential information relating to pending litigation while working for opposing counsel. The court explained disqualification was warranted, not because the disqualified attorney had a duty to protect the adverse party's confidences, but because the situation implicated the attorney's

12

ethical duty to maintain the integrity of the judicial process: "[T]he integrity of judicial proceedings was threatened not by attorney misconduct, but by employee misconduct neither sanctioned nor sought by the attorney." (*Id.* at p. 592; see *Rico v. Mitsubishi Motors Corp.* (2007) 42 Cal.4th 807, 818 ["'[a]n attorney has an obligation not only to protect his client's interests but also to respect the legitimate interests of fellow members of the bar, the judiciary, and the administration of justice'"] (*Rico*); see also *Roush v. Seagate Technology, LLC* (2007) 150 Cal.App.4th 210, 219.)

Similarly, in both *Shadow Traffic Network v. Superior Court* (1994) 24 Cal.App.4th 1067 and *County of Los Angeles v. Superior Court* (1990) 222 Cal.App.3d 647 the court held disqualification was warranted when an independent contractor (an expert witness) hired by a law firm had previously consulted with, and obtained confidential information from, opposing counsel regarding pending litigation. (See also *Toyota Motor Sales, U.S.A. v. Superior Court* (1996) 46 Cal.App.4th 778, 782.)

A lawyer and his or her law firm may also be disqualified for intentionally making use of an opposing party's confidential information acquired through improper means. (*Clark v. Superior Court, supra*, 196 Cal.App.4th at p. 55 ["disqualification is proper as a prophylactic measure to prevent future prejudice to the opposing party from information the attorney should not have possessed"]; *Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 309 ["disqualification is proper where, as a result of a prior representation or through improper means, there is a reasonable probability counsel has obtained information the court believes would likely be used advantageously against an adverse party

during the course of the litigation"]; see *McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1120.)

In the context of inadvertently disclosed attorney-client communications, the Supreme Court in *Rico*, *supra*, 42 Cal.4th 807 adopted the rule articulated in *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644 (*State Fund*), holding, when a lawyer comes into possession of materials that clearly appear to be protected by the attorney-client privilege and it is reasonably apparent the materials were made available through inadvertence (that is, without the holder of the privilege having waived it), the lawyer receiving the materials must refrain from examining the materials any more than is necessary to ascertain their privileged status and then must immediately notify the party entitled to the privilege about the situation. (*Rico*, at pp. 816-818; see *State Fund*, at pp. 656-657.) Applying the *State Fund* rule to confidential material protected by the attorney work product doctrine, as well as the attorney-client privilege, the *Rico* Court held the trial court had properly disqualified counsel who not only failed to conduct himself as required under *State Fund* but also acted unethically in making full use of a confidential document. (*Rico*, at pp. 810, 819; accord, *McDermott Will & Emery LLP v. Superior Court*, *supra*, 10 Cal.App.5th at p. 1120 ["'[d]isqualification is proper as a prophylactic measure to prevent future prejudice to the opposing party from information the attorney should not have possessed'; an affirmative showing of existing injury from the misuse of privileged information is not required"]; see *Clark v. Superior Court*, *supra*, 196 Cal.App.4th at pp. 43-44, 54-55 [attorney who received opponent's privileged documents from his own client, who had stolen them when fired, rather than through inadvertent production by opposing party or

its counsel, subject to the *State Fund* rule; disqualification was proper prophylactic remedy based on evidence attorney had reviewed the documents more than minimally necessary to determine their privileged nature and had affirmatively used some of the substantive information in the privileged documents].)

    3. *Richie Could Not Act as Ra's Counsel Because He Obtained Privileged Information Relating to the Pending Litigation as O'Gara Coach's President and Chief Operating Officer*

Because Richie never had an attorney-client relationship with O'Gara Coach while employed as its president and chief operating officer, the trial court correctly rejected O'Gara Coach's argument for disqualification of Richie and Richie Litigation based on a theory of improper successive representation. However, the court erred in failing to consider O'Gara Coach's alternate argument that disqualification of Richie and his law firm was required as a prophylactic measure because the firm was in possession of confidential information, protected by O'Gara Coach's attorney-client privilege, concerning Ra's allegedly fraudulent activities at issue in this litigation. (See, e.g, *Roush v. Seagate Technology, LLC, supra*, 150 Cal.App.4th at p. 219 [although the "classic disqualification case involves the attorney switching sides, . . . [¶] [i]n other cases, counsel may be disqualified where counsel has obtained the secrets of an adverse party in some other manner"; "[d]isqualification is warranted in these cases, not because the attorney has a duty to protect the adverse party's confidences, but because the situation implicates the attorney's ethical duty to maintain the integrity of the judicial process"].)

15

As discussed, based on the principles established by *Rico*, *supra*, 42 Cal.4th 807, *Clark v. Superior Court*, *supra*, 196 Cal.App.4th 37 and *McDermott Will & Emery LLP v. Superior Court*, *supra*, 10 Cal.App.5th 1083, if the holder of the attorney-client privilege has not waived the privilege, lawyers representing an adverse party who have received such information knowing it is privileged have an ethical duty not to use it.  It does not matter whether the information has been provided deliberately or inadvertently (e.g., *McDermott Will & Emery*, at p. 1109 ["[a]lthough the *State Fund* rule originated in the context of one attorney inadvertently producing his client's privileged documents to the opponent's attorney during litigation, neither the statement of the rule nor the policy underlying it supports limiting the scope of the rule to that one circumstance"]; see *Clark*, at pp. 43-44, 52 [applying *State Fund* rule to stolen documents]) or by an employee of the opposing party's counsel or the opposing party itself (compare *Complex Asbestos*, *supra*, 232 Cal.App.3d at pp. 587-588 [information disclosed by opposing counsel's nonlawyer employee] with *DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 832 [foundation would have standing to seek disqualification of opposing counsel following disclosure of privileged information by former foundation board member "based on the duty of confidentiality [former board member] owed to it despite the absence of attorney-client relationship between [opposing counsel] and the foundation"]). Nor is it necessary for the party seeking to protect its privileged information to make an affirmative showing of existing injury from the misuse of the privileged information; the threat of such use is sufficient to justify disqualification.  (*McDermott Will & Emery*, at p. 1120; *Clark*, at p. 55.)

16

Here, O'Gara Coach presented evidence, undisputed by Ra,[3] that Richie, as president and chief operating officer of O'Gara Coach through February 2016, participated in meetings, phone calls and email communications with outside counsel investigating Ra's and Thomas Wu's activities that developed theories material to O'Gara Coach's defense and forming the basis for its cross-claims in this litigation and that are protected by the lawyer-client privilege.  The privilege belongs to O'Gara Coach.  Richie, even though no longer an officer of O'Gara Coach, has no right to disclose information protected by that privilege without O'Gara Coach's consent.  (See Evid. Code, § 954; *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 730 ["[t]he attorney-client privilege, set forth at Evidence Code section 954, confers a privilege on the client 'to refuse to disclose, and to prevent another from disclosing a confidential communication between client and lawyer . . .'"]; see also *Chubb & Son v. Superior Court* (2014) 228 Cal.App.4th 1094, 1103 ["[u]nless otherwise specified, it is the client who holds the privilege and controls disclosure of the confidential communication"].)  And now that Richie is a member of the California State Bar, O'Gara Coach is entitled to insist that he honor his ethical duty to maintain the integrity of the judicial

_____

[3]     In argument in the trial court and again in his appellate briefs, Ra has questioned the nature and extent of privileged information Richie obtained that is material to the pending litigation.  However, in his short, six paragraph declaration in opposition to the motion to disqualify, Richie did not dispute former Arent Fox partner Halbert Rasmussen's description of his interactions with Richie in early 2016 as they related to this matter.

17

process by refraining from representing former O'Gara Coach employees in litigation against O'Gara Coach that involve matters as to which he possesses confidential information. (See *Rico*, *supra*, 42 Cal.4th at p. 818; *Complex Asbestos*, *supra*, 232 Cal.App.3d at p. 592.)

*Maruman Integrated Circuits, Inc. v. Consortium Co.* (1985) 166 Cal.App.3d 443, relied upon by Ra to argue that a former employee has no duty to maintain the confidentiality of his employer's attorney-client privileged communications, does not require a different result. *Maruman* involved a lawsuit by a corporation against its former president. The assistant to the corporation's secretary, who had access to attorney-client privilege communications between the corporation and its litigation counsel, left the corporation and went to work for the former president. (*Id.* at pp. 445-446.) After the assistant revealed during her deposition that she had spoken to the former president's current counsel concerning her prior conversations with the corporation's lawyers and had delivered to them two letters between the corporation and its lawyers, the corporation moved to disqualify the former president's law firm. (*Id.* at p. 446.) The trial court denied the motion, and the court of appeal affirmed, holding the corporation could not complain that the former president's current counsel "breached its duty to maintain its confidences, where the attorney-client privilege never existed between them." (*Id.* at p. 449; see *Cooke v. Superior Court* (1978) 83 Cal.App.3d 582, 592 ["we know of no case where disqualification of an attorney or his firm was imposed purely as a punitive or disciplinary measure, and where there was no prior representation or confidential professional

18

relationship between the complaining party and the attorney or law firm who sought to be disqualified"] (*Cooke*).)[4]

The unequivocal statements in *Maruman* and *Cooke*, echoed by the trial court in its ruling denying O'Gara Coach's motion to disqualify Richie Litigation, that disqualification was never appropriate based on exposure to privileged information absent an attorney-client relationship between the party moving for disqualification and the attorney or firm sought to be disqualified, are simply inconsistent with more recent authority, as discussed, including *Rico*, *supra*, 42 Cal.4th 807, *McDermott Will & Emery LLP v. Superior Court*, *supra*, 10 Cal.App.5th 1083 and *Clark v. Superior Court*, *supra*, 196 Cal.App.4th 37.

Moreover, as the court of appeal in *Complex Asbestos*, *supra*, 232 Cal.App.3d 572 explained in distinguishing *Maruman* and *Cooke*, the person who had disclosed the adverse party's attorney-client communications in those cases was the attorney's own client or an employee of the client: "If the disclosure is made by the attorney's own client, disqualification is neither justified nor an effective remedy. A party cannot 'improperly' disclose information to its own counsel in the prosecution of its own lawsuit." (*Complex Asbestos*, at p. 591; but see *Clark v. Superior Court*, *supra*, 196 Cal.App.4th at pp. 54-55 [disqualifying counsel who received stolen documents from his client and affirmatively used information from the documents in the lawsuit against

---

[4]     In *Cooke*, *supra*, 83 Cal.App.3d 582 the client in a dissolution proceeding had given her attorney copies of attorney-client privileged documents belonging to her husband that had been surreptitiously copied and delivered to the wife by her husband's butler. (*Id.* at p. 592.)

client's former employer].)[5]  But, as discussed, a far different rule applies when the confidential information comes into an attorney's possession through a former employee of the adverse party who is now an employee (or principal) of that attorney's law firm:  "A law firm that hires a nonlawyer who possesses an adversary's confidences creates a situation, similar to hiring an adversary's attorney, which suggests that confidential information is at risk."  (*Complex Asbestos*, at p. 593.)  It is this rule, which applies a presumption of shared confidences rebuttable by a showing that the tainted employee has been effectively screened from the relevant matters, that was utilized in the *Complex Asbestos* litigation and in *Shadow Traffic Network v. Superior Court*, *supra*, 24 Cal.App.4th 1067.  Under the applicable legal standards, therefore, Richie Litigation might properly represent Richie in his ongoing litigation with O'Gara

---

[5]  In *General Dynamics Corp. v. Superior Court* (1994) 7 Cal.4th 1164, 1190, the Supreme Court held an in-house counsel could sue a former employer for wrongful termination as long as confidential information was not publicly disclosed.  In *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 304, 310, this court held, based on the principles articulated in *General Dynamics*, that a former in-house counsel may disclose employer-client confidences to his or her own attorneys to the extent they may be relevant and necessary to the preparation and prosecution of the former counsel's wrongful termination action against the former client-employer.  Client confidences in such circumstances can be protected from unwarranted public disclosure by use of protective orders, limiting the admission of evidence, in camera proceedings and the use of sealed records. (See, e.g., *General Dynamics*, at p. 1191; *Neal v. Health Net, Inc.*, *supra*, 100 Cal.App.4th at p. 844; see also *Fox Searchlight*, at pp. 309-310.)

Coach, notwithstanding Richie's possession of relevant confidential information protected by O'Gara Coach's attorney-client privilege (an issue not presented by this appeal); but, given Richie Litigation's failure to demonstrate any screening of Richie from other O'Gara Coach litigation matters, the firm may not continue to represent Ra in the instant matter.

4. *Richie Litigation, Not Just Richie, Must Be Disqualified Under Established Rules for Vicarious Disqualification*

Emphasizing that Robert Lu of Richie Litigation substituted into this lawsuit as his counsel and insisting that Richie has not been involved in the pending case at any time, Ra argues, even if Richie were disqualified, the rules of vicarious disqualification should not be applied to Richie Litigation. However, the law is now well-established that, once a showing has been made that someone at the adverse party's law firm possesses confidential attorney-client information materially related to the proceedings before the court, a rebuttable presumption arises that the information has been used or disclosed in the current employment. (*Complex Asbestos*, *supra*, 232 Cal.App.3d at p. 596.) "The presumption is a rule by necessity because the party seeking disqualification will be at a loss to prove what is known by the adversary's attorneys and legal staff." (*Ibid*.) Moreover, "disqualification does not require evidence of an existing injury . . . ." (*McDermott Will & Emery*, at p. 1124.) "[D]isqualification is proper as a prophylactic measure to prevent future prejudice to the opposing party from information the attorney should not have possessed." (*Clark v. Superior Court*, *supra*, 196 Cal.App.4th at p. 55.)

As discussed, Ra provided no evidence in opposition to O'Gara Coach's motion that Richie had been screened from Robert Lu or any of the several other lawyers at Richie Litigation

who have worked on the pending litigation.  (See *Kirk v. First American Title Ins. Co., supra,* 183 Cal.App.4th at p. 801 [presumption that knowledge of a client's confidences should be imputed to all members of a tainted attorney's law firm might be refuted by evidence that ethical screening will effectively prevent the sharing of confidences in a particular case].)  In these circumstances the doctrine of imputed knowledge requires the vicarious disqualification of the entire Richie Litigation firm. (*Charlisse C., supra,* 45 Cal.4th at p. 161.)

## DISPOSITION

The order denying the motion to disqualify Richie Litigation is reversed.  The trial court on remand shall issue a new order granting O'Gara Coach's motion.  O'Gara Coach is to recover its costs on appeal.


PERLUSS, P. J.


We concur:



ZELON, J.



SEGAL, J.

22