Filed 11/5/21  Providence Industries v. Lularoe CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

PROVIDENCE INDUSTRIES, LLC.,

    Plaintiff, Cross-Defendant and Respondent,

v.

LULAROE, LLC, et al.,

    Defendants, Cross-Complainants and Appellants.

E075513

(Super.Ct.No. RIC1825263)

OPINION

APPEAL from the Superior Court of Riverside County.  Jackson Lucky, Judge. Affirmed.

Rutan & Tucker, Alejandro S. Angulo, Bradley A. Chapin, Kathryn D.Z. Domin, and Ashley Vernick, for Defendants, Cross-Complainants and Appellants.

Reed Smith, Marsha A. Houston, Christopher O. Rivas, and Kasey J. Curtis, for Plaintiff, Cross-Defendant and Respondent.

Plaintiff and respondent Providence Industries, LLC. (Providence) and defendants and appellants LuLaRoe, LLC and LLR, Inc. (collectively, LuLaRoe) are engaged in civil

1

litigation arising from business disputes. During the litigation, an employee of LuLaRoe's outside counsel, acting anonymously and without authorization, sent certain documents to Providence's outside counsel. After a series of hearings regarding whether LuLaRoe had adequately demonstrated that the documents were privileged, the trial court entered an order requiring, among other things, that Providence's counsel return the documents and that any copies be destroyed.

At issue here is LuLaRoe's subsequent motion to disqualify Providence's counsel. The trial court denied the motion, explaining in a written ruling that Providence's counsel had complied with their duties regarding inadvertently disclosed privileged documents under *State Compensation Insurance Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644 (*State Fund*) and *Rico v. Mitsubishi Motors Corp.* (2007) 42 Cal.4th 807 (*Rico*). We find that the trial court did not abuse its discretion by its ruling, and therefore affirm.

## I. FACTS

Providence's initial complaint in this matter was filed in November 2018. The case garnered some degree of public attention, including news stories and discussion on various public websites.

On September 19, 2019, outside counsel for Providence, Reed Smith, LLP (Reed Smith) received an anonymous letter relating to the litigation. The letter was processed in the usual manner for incoming mail correspondence in the matter; it was scanned by a secretary, saved to the electronic client file, and distributed by email to the litigation team and Providence's in-house general counsel.

A Reed Smith lawyer representing Providence, Marsha Houston, skimmed the letter and became concerned that "it appeared to possibly contain a page of confidential material that was not public." She expressed her concern to another attorney on the litigation team, Chris Rivas. Rivas, too, skimmed the document, and he agreed with Houston that it might contain confidential material. Rivas and Houston recognized that the document appeared to be from the same source as three other anonymous communications received within the previous month. Those earlier communications had not appeared to Houston or Rivas to contain anything confidential. Rather, they appeared to be "the musings of a disgruntled person who was following the case."[1] Houston and Rivas had not found the earlier anonymous communications notable, due to the relatively public nature of Providence's dispute with LuLaRoe, which had generated other instances where nonparties had contacted them about the case.

More specifically, the four documents consisted of a total of five pages. The first of the documents that Reed Smith received was a one-page printout of an email with handwritten notes on it. The email was sent by Providence's in-house counsel to LuLaRoe's outside counsel and a non-attorney employee of LuLaRoe, and copied to another individual that our record does not identify (apparently a non-attorney employee

---

[1] Neither the trial court nor this court directly reviewed the documents at issue, as they were not made part of the record. The evidence of the contents of the documents consists entirely of attorney declarations.

of Providence).[2] The next two documents were single-page typewritten letters, sent anonymously. The fourth document included another one-page typewritten letter, as well as a one-page attachment that contained the information that caught the Reed Smith attorneys' attention as potentially confidential.

"Within days" after September 19, 2019, Houston and Rivas consulted with Reed Smith's in-house counsel, as well as the California State Bar's ethics hotline. The state bar attorney suggested that they disclose the document containing potentially confidential information to opposing counsel. "In an abundance of caution," however, the Reed Smith attorneys decided to disclose all of the anonymously received documents.

On September 25, 2019, a copy of the September 19, 2019 communication (but not the other documents) was shared with two associated attorneys in a separate, but related matter. Our use of the passive voice here is intentional—the record does not reveal who distributed the document to those attorneys.[3]

---

[2] In LuLaRoe's later-created privilege log, the document is described as containing handwritten notes on a printout of an email sent by a person who is in-house counsel for Providence. The log shows the email was sent to an attorney at Floratos, Loll, and Devine, PLC (Floratos Loll) who serves as "outside general counsel" to LuLaRoe, as well as to LuLaRoe's Chief Financial Officer. The log identifies the Floratos Loll attorney as the author of the handwritten notes. The log also shows the email was copied to another individual not identified in our record; we infer that he is most likely a non-attorney employee of Providence, perhaps a financial officer.

[3] Houston and Rivas's declarations do not discuss this distribution of the document, and nothing else in the record establishes who made the September 25, 2019 distribution to the associated attorneys. Reed Smith's "Report Regarding Destruction of Documents" states only that the document "was provided" to those attorneys on September 25, 2019, and that Reed Smith "confirmed" that the receiving attorneys had "each deleted the electronic copies . . . from their respective Microsoft Outlook inboxes."

4

In a September 30, 2019 letter to Alex Angulo, counsel for LuLaRoe, Rivas disclosed Reed Smith's receipt of all four documents, provided copies, and expressed concern that the most recently received document might contain confidential information.[4] Rivas stated that Reed Smith had not "carefully reviewed" any of the documents, but observed that none of them "appear to be privileged." Rivas demanded that, if LuLaRoe was going to claim privilege, Angulo "provide sufficient information for the Court to determine" whether a privilege applied. Rivas expressly disclaimed any "waiver of any of Plaintiff's rights or remedies," and stated that "Plaintiff does not concede that any of the materials . . . are privileged or confidential," explaining that the materials were being provided "because Plaintiff may use the most recent communication in discovery" and "in the interests of full disclosure and after having consulted with the state bar ethics hotline regarding this unusual circumstance."

In a responding letter sent October 1, 2019, Angulo asserted that the privileged nature of the documents was "obvious" upon even "a cursory review," and demanded, among other things, that the documents be returned and all copies be destroyed. Rivas

---

[4] LuLaRoe's counsel included both Rutan & Tucker, LLP (Rutan) and Floratos Loll. Angulo is an attorney at Rutan. The source of the documents at issue was eventually determined to be a legal secretary at Floratos Loll, who had acted without authorization.

Rivas's September 30, 2019 letter to Angulo stated that the most recent anonymous "communication" had "enclosed a list of what purports to be a summary of distributions and transfers that may be salient to the Plaintiff's fraudulent transfer claims." In their declarations submitted in opposition to LuLaRoe's motion to disqualify, Rivas and Houston averred that they could not recall any specifics regarding the contents of any of the four documents, and Rivas averred that he could not "even recall what the information was."

5

replied the next day, declining Angulo's demands absent "sufficient factual information" to evaluate whether the documents were "actually privileged," and again stating that the documents did not appear to privileged from the "very cursory review" Reed Smith attorneys had conducted. Motion practice ensued.

Initially, the trial court agreed with Providence, denying LuLaRoe's ex parte application for an order requiring compliance with the demands asserted in Angulo's October 1, 2019 letter due to a lack of evidence that the documents were privileged. The trial court also found lacking LuLaRoe's evidence in support of a noticed motion seeking the same relief. After a continuance to allow LuLaRoe to provide supplemental attorney declarations, however, Providence and the trial court were both satisfied with LuLaRoe's showing.[5] On December 18, 2019, the court granted LuLaRoe's motion and entered an order requiring, among other things, that Providence and Reed Smith return the "claimed privileged information" and destroy all copies. They complied with the order and confirmed that originals had been returned and any copies held by Providence, Reed Smith, or the associated attorneys in the related matter had been destroyed.

---

[5] More specifically, at issue was whether LuLaRoe had submitted declarations sufficient to constitute a prima facie showing that the anonymous letters fell under the attorney client privilege as defined in Evidence Code section 952, and whether the handwritten notes on one of the documents were attorney work product, privileged under Code of Civil Procedure section 2018.030. Providence did not attempt to rebut LuLaRoe's supplemented prima facie showing.

On May 22, 2020, LuLaRoe filed its motion to disqualify Reed Smith. After a hearing, the trial court denied the motion in a written "Ruling on Submitted Matter" issued July 23, 2020.

## II. DISCUSSION

LuLaRoe argues that the trial court abused its discretion by denying the motion to disqualify Reed Smith. We hold that the trial court acted within its discretion.

### A. Applicable Law

The "seminal California decision defining a lawyer's ethical obligations upon receiving another party's attorney-client privileged materials" is *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644 (*State Fund*). (*McDermott Will & Emery, LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1106 (*McDermott*).) *State Fund* held: "When a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were provided or made available through inadvertence, the lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged. The parties may then proceed to resolve the situation by agreement or may resort to the court for guidance with the benefit of protective orders or other judicial intervention as may be justified." (*State Fund*, *supra*, 70 Cal.App.4th at pp. 656-657.)

In *Rico v. Mitsubishi Motors Corp.* (2007) 42 Cal.4th 807, 817 (*Rico*), our Supreme Court adopted this "*State Fund* rule," describing it as a "fair and reasonable approach." *Rico* extended the rule to apply not just to attorney-client privileged materials, but also materials protected by the attorney work product doctrine. (*Id.* at pp. 817-818.) *Rico* describes the *State Fund* rule as "an objective standard" that asks "whether reasonably competent counsel, knowing the circumstances of the litigation, would have concluded the materials were privileged, how much review was reasonably necessary to draw that conclusion, and when counsel's examination should have ended." (*Rico*, at p. 818.)

In *State Fund*, the Court of Appeal also addressed the circumstance where the materials do not "obviously" or "clearly" appear to be confidential or privileged: "[W]henever a lawyer ascertains that he or she may have privileged attorney-client material that was inadvertently provided by another, that lawyer must notify the party entitled to the privilege of that fact."[6] (*State Fund*, *supra*, 70 Cal.App.4th at p. 657.) Several later cases have concluded that the opposing party's claim of privilege will "trigger[]" the receiving attorney's "*State Fund* obligations," no matter what the face of the material and the circumstances of its disclosure may arguably show. (*McDermott*, *supra*, 10 Cal.App.5th at p. 1112; see *id.* at 1116 [objections of opposing counsel

---

[6] *Rico* does not discuss or apply this aspect of *State Fund*, as the Supreme Court in *Rico* only considered whether the attorney notes at issue were clearly privileged and whether it was reasonably apparent that their disclosure was inadvertent. (*Rico*, *supra*, 42 Cal.4th at pp. 818-819.)

"constitute substantial evidence that [the receiving law firm] reasonably should have realized the [material] was an inadvertently disclosed, privileged document subject to the *State Fund* rule"]; *Clark v. Superior Court* (2011) 196 Cal.App.4th 37, 46 (*Clark*) [counsel's warning on privilege holder's behalf triggers an opposing attorney's *State Fund* duties].) That is, the receiving attorney must at that point "refrain from examining the materials any more than is essential to ascertain if the materials are privileged" or otherwise using the materials until the parties have "resolve[d] the situation by agreement" or received judicial guidance. (*State Fund*, *supra*, at pp. 656-657.)

The consequence of the receiving counsel's failure to comply with *State Fund* obligations can be disqualification, but that is not automatically the case. (See *State Fund*, *supra*, 70 Cal.App.4th at p. 657 [disqualification "might be justified . . . assuming other factors compel disqualification"].) "A trial court . . . may not order disqualification "'simply to punish a dereliction that will likely have no substantial continuing effect on future judicial proceedings.'"" (*McDermott*, *supra*, 10 Cal.App.5th at p. 1120.) Nevertheless, an "affirmative showing of existing injury from the misuse of privileged information is not required." (*Ibid.*) Rather, "'the significant question'" is whether there is a "'genuine likelihood'" that the receiving counsel's review and use of the inadvertently disclosed materials will "'affect the outcome of the proceedings before the court.'" (*Ibid.*; see also *Clark*, *supra*, 196 Cal.App.4th at p. 55 [same].)) "'Thus, disqualification is proper where . . . there is a reasonable probability counsel has obtained

9

information the court believes would likely be used advantageously against an adverse party during the course of the litigation.'" (*McDermott*, at p. 1120*.*)

"A trial court's decision to grant or deny a motion to disqualify counsel is generally reviewed for abuse of discretion." (*O'Gara Coach Co., LLC v. Ra* (2019) 30 Cal.App.5th 1115, 1123; accord *Rico*, *supra*, 42 Cal.4th at p. 819 (*Rico*).) "'In exercising its discretion, the trial court must make a reasoned judgment that complies with applicable legal principles and policies.'" (*Clark*, *supra*, 196 Cal.App.4th at p. 46.) "'The order is subject to reversal only when there is no reasonable basis for the trial court's decision.'" (*Ibid.*) The trial court's express and implied factual findings are reviewed for substantial evidence. (*People ex rel Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143.) "Where the trial court has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable." (*Federal Home Loan Mortgage Corp. v. La Conchita Ranch Co.* (1998) 68 Cal.App.4th 856, 860.) Rather, we must draw all inferences in favor of the prevailing party and accept the trial court's resolution of conflicts in the evidence. (*Clark*, *supra*, 196 Cal.App.4th at pp. 46-47.)

*B. Analysis*

A premise of LuLaRoe's appellate arguments is that even the very first of the anonymously sent documents that Reed Smith received appeared on its face to be privileged, or at least that any reasonably competent lawyer reviewing the document would have recognized it may be privileged, triggering immediate duties under *State*

*Fund*. The evidence, however, does not support LuLaRoe's premise. The email itself is not a privileged document: it was sent by *Providence's* counsel to LuLaRoe's counsel and a LuLaRoe non-attorney employee, with a copy to another individual. A declaration from LuLaRoe's outside counsel later provided evidence that the handwritten notes on the printed copy of the email were in fact attorney work product. But the declaration does not demonstrate why a reasonable lawyer initially reviewing the document would have been on notice that the handwriting belonged to an attorney, let alone LuLaRoe's attorney.[7] We therefore find no abuse of discretion in the trial court's conclusion that Reed Smith's receipt of that first document did not trigger any immediate duties under *State Fund*.

Similarly, LuLaRoe eventually submitted declarations averring that the typewritten, anonymous letters, composed by the Floratos Loll legal secretary who sent them, contained statements that "reflect or purport to reflect the substance of communications between [LuLaRoe] attorneys handling this case and members of the management team at [LuLaRoe]," even if in "mischaracterized or distorted" form. As the trial court correctly noted, however, these declarations establish only that LuLaRoe employees and attorneys recognized the privileged content. They do not establish that a reasonably competent counsel on the other side of the litigation, "knowing the

---

[7] LuLaRoe has asserted, in its privilege log and elsewhere, that the email was printed from its attorney's account. Nothing in evidence, however, explains how this was determined, or why someone reviewing the document should reasonably have recognized that it was printed out from LuLaRoe's attorney's account as opposed to that of one of the other recipients (or the sender, for that matter).

circumstances of the litigation, would have concluded the materials were privileged" (*Rico*, *supra*, 42 Cal.4th at p. 818), as opposed to merely being the nonprivileged "musings of a disgruntled person who was following the case," as Rivas and Houston initially perceived them to be. Thus, the trial court did not abuse its discretion in determining that Reed Smith did not violate its ethical obligations under the *State Fund* rule with respect to the second and third anonymous communications.

Once Reed Smith received the last of the anonymously sent documents, it had additional context for all of the communications, provided by the attachment containing what seemed to be LuLaRoe's confidential information. With the new context, Houston and Rivas inferred (correctly) that LuLaRoe might assert a claim of privilege and inadvertent disclosure regarding the documents, even though the Reed Smith attorneys did not believe, based on the information they had, that the documents were in fact privileged. Rivas therefore notified LuLaRoe's counsel of the firm's receipt of the documents, initiating a dialogue on the issue. This is exactly what *State Fund* instructs attorneys in such circumstances to do. (See *State Fund*, *supra*, 70 Cal.App.4th at p. 657 ["[W]henever a lawyer ascertains that he or she may have privileged attorney-client material that was inadvertently provided by another, that lawyer must notify the party entitled to the privilege of that fact"].)

LuLaRoe faults Reed Smith for saving the documents to its electronic document system and distributing the documents at issue to the team working on the litigation, which included both Reed Smith attorneys and Providence's in-house counsel. That

distribution of the documents, however, apparently occurred before any attorney review of the documents, as a function of the firm's routine procedures for distributing incoming correspondence relating to the case, and there is no evidence to the contrary. There is nothing in *State Fund* or *Rico*, nor in any of the authority interpreting and applying those cases, suggesting that a law firm must implement screening procedures to verify that incoming correspondence does not include inadvertently disclosed privileged materials before distribution to a litigation team. Rather, any duties an attorney may have under *State Fund* are triggered when the attorney reviews the material and ascertains that it is or might be inadvertently disclosed and privileged. (See *State Fund*, *supra*, 70 Cal.App.4th at pp. 656-657.)

LuLaRoe also suggests that Houston and Rivas acted improperly by showing the documents to the Reed Smith attorney serving as the firm's in-house counsel. There is nothing in evidence, however, suggesting that this distribution of the documents was for any purpose other than seeking ethical guidance in an unusual situation. In our view, such a consultation falls squarely within the degree of examination of the documents allowed by *State Fund* as "essential to ascertain if the materials are privileged" and implicitly encouraged as part of every attorney's """"obligation not only to protect his client's interests but also to respect the legitimate interests of fellow members of the bar, the judiciary, and the administration of justice."""" (*State Fund*, *supra*, 70 Cal.App.4th at pp. 656-657.) *State Fund* and *Rico* are entirely compatible with the principle that

13

lawyers, too, should be encouraged to seek legal advice as necessary to ensure that they comply with their legal and ethical obligations.

Additionally, LuLaRoe suggests that the Reed Smith attorneys acted improperly by failing to return the documents immediately and destroy any copies once LuLaRoe asserted a claim of privilege. Not so. There is authority that Angulo's claim of privilege put Reed Smith on notice, to the extent it was not before, that there was at least a dispute about whether the documents were privileged, triggering *State Fund* duties to "refrain from examining the materials any more than is essential to ascertain if the materials are privileged," and "then proceed to resolve the situation by agreement or [. . .] resort to the court for guidance with the benefit of protective orders and other judicial intervention as may be justified." (*State Fund*, *supra*, 70 Cal.App.4th at pp. 656-657; see *McDermott*, *supra*, 10 Cal.App.5th at p. 1112; *Clark*, *supra*, 196 Cal.App.4th at p. 46.) There is no authority supporting the notion that the receiving party must immediately capitulate to a claim of privilege, no matter whether currently available information demonstrates the claim to have merit. Here, Reed Smith initially attempted to resolve the situation by agreement, but LuLaRoe sought judicial intervention. Both sides were, in this regard, acting as contemplated by *State Fund*.

A closer question is presented by the distribution of the document received on September 19, 2019 to two attorneys at an associated firm in a related case. If the document was shared as part of trying to identify the anonymously sent document—and in particular, to determine if it contained confidential information, and if so, whose?—

14

that would at least arguably fall within the category of review "essential to ascertain if the materials are [or might be] privileged." (*State Fund*, *supra*, 70 Cal.App.4th at p. 656.) If, however, Houston and Rivas had already ascertained that the document contained LuLaRoe's confidential information and might be subject to a claim of privilege, *State Fund* instructs that their duty was to notify the party who would be entitled to the privilege; a delay in doing so while the document was shared with associated counsel in a related matter would be concerning. (See *id.* at p. 657.) Our record, however, does not establish whether the document was shared with those attorneys before or after Houston and Rivas's consultation with Reed Smith's in-house counsel and the state bar ethics hotline, and includes no evidence as to why the document was shared with those attorneys, who shared the document with them, or the extent of the attorneys' review of the document before they destroyed it in accordance with the trial court's order.

In any case, even assuming that Reed Smith fell short of its ethical obligations under *State Fund* and *Rico* in one respect or another, disqualification would not be appropriate if the ""dereliction . . . will likely have no substantial continuing effect on future judicial proceedings."" (*McDermott*, *supra*, 10 Cal.App.5th at p. 1120.) The record amply supports the conclusion that it would not. The copies previously in Reed Smith's possession have been destroyed or returned, and Houston and Rivas both declared that they had only the most general memories of their contents, including no

15

specifics about the privileged or confidential aspects.[8] Although the documents were distributed to a larger number of Reed Smith attorneys, only Houston, Rivas, and the in-house counsel they consulted actually reviewed the documents in even a cursory way.[9] There is no evidence compelling the conclusion that Reed Smith has used or is likely to use the documents at any point in the litigation (other than the initial dispute regarding whether the documents are privileged). (Cf., e.g., *McDermott*, *supra*, 10 Cal.App.5th at p. 1122 [upholding disqualification where receiving firm continued to review and use inadvertently disclosed privileged documents in discovery and in formulating claims and defenses even after claim of privilege asserted]; *Clark*, *supra*, 196 Cal.App.4th at p. 53 [upholding disqualification where there was evidence that receiving attorney "excessively reviewed" privileged documents and "affirmatively used" information from them to question witnesses, as well as to craft and support claims].) On this record, the trial court was well justified in deciding that there was no "'genuine likelihood'" that the receiving counsel's review and use of the inadvertently disclosed materials would "'affect the

---

[8] Moreover, given that the documents have not been included in the record and their contents have not been described for the record except in general terms, there is no basis to conclude the Reed Smith attorneys could have gained any substantial advantage in the litigation from the privileged information in the documents, even if they did remember it.

[9] Rivas declared that he verified with the firm's technical specialists that he had been the only Reed Smith attorney who accessed the electronic copies of the documents in the firm's systems, and described actions he took to ensure that the original documents were "maintained confidentially, even within Reed Smith."

outcome of the proceedings before the court.'" (*McDermott*, *supra*, 10 Cal.App.5th at p. 1120.)

In support of a different conclusion, LuLaRoe cites *O'Gara Coach Co., LLC v. Ra* (2019) 30 Cal.App.5th 1115, 1128-1129 (*O'Gara*) for the proposition that it is unnecessary "for the party seeking to protect its privileged information to make an affirmative showing of existing injury from the misuse of the privileged information; the threat of such use is sufficient to justify disqualification." LuLaRoe proposes that Reed Smith's "mere threat to use the Privileged Documents alone 'is sufficient to justify disqualification.'" This argument fails for two reasons. First, it is questionable whether Rivas's anodyne reservation of rights and explanation of why he was sending the documents to Angulo in his September 30, 2019 letter, or anything else in the parties' correspondence, is reasonably interpreted as a "threat."[10] Second, that is not the type of threat that *O'Gara* addressed. *O'Gara* involved concerns raised by the circumstance that an attorney for one side of the litigation had previously been the president and CEO of an adverse party, and had in that former role played an active part in developing the adverse party's claims and defenses in the current litigation. At issue was whether there was a genuine likelihood the adverse party's confidential and privileged information would be

---

[10] Rivas closed his initial correspondence to Angulo with the following paragraph: "Please note that this letter is being sent without waiver of any of Plaintiff's rights or remedies. In sending this letter, Plaintiff does not concede that any of the materials enclosed with the letter are privileged or confidential. However, because Plaintiff may use the most recent communication in discovery, it is providing you with all communications it received in the interests of full disclosure and after having consulted with the state bar ethics hotline regarding this unusual circumstance."

used to its opponents' advantage in the litigation. (See *O'Gara*, *supra*, 30 Cal.App.5th at p. 1129 [citing to *McDermott*'s and *Clark*'s discussions of "genuine likelihood" standard].) Unsurprisingly on the facts before it, the *O'Gara* court found there was that sort of "threat" that the information would be used or disclosed, justifying disqualification of the attorney and his firm. (*O'Gara*, at pp. 1129, 1131-1132.) Our facts are different.

The trial court's conclusions—that Reed Smith complied with its obligations under *State Fund* and *Rico*, and in any case disqualification is inappropriate because there is no genuine likelihood that Reed Smith will advantageously use the inadvertently disclosed information—were reasonable.[11] We therefore will not disturb its ruling.

### III. DISPOSITION

The trial court's denial of LuLaRoe's motion to disqualify is affirmed. Providence is awarded costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL         
                        J.

We concur:

McKINSTER        
       Acting P. J.

FIELDS            J.

---

[11] Indeed, on this record, even if we were not required to apply a deferential standard of review, we would reach the same conclusions.