Filed 3/21/23

# CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION SEVEN

| | |
|---|---|
| SHAUNEEN MILITELLO et al., | B318397 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 21SMCV00789) |
| v. | |
| VFARM 1509 et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mark A. Young, Judge.  Affirmed.

Hosie Rice, Spencer Hosie, Diane S. Rice and Darrell R. Atkinson for Plaintiffs and Appellants Shauneen Militello, Spencer Hosie and Hosie Rice LLP.

Zweiback Fiset & Zalduendo, Rachel L. Fiset and Jeanine Zalduendo for Defendant and Respondent Ann Lawrence Athey.

————————————

Shauneen Militello, Ann Lawrence Athey (Lawrence) and Rajesh Manek are the co-owners of Cannaco Research Corporation (CRC), a licensed manufacturer and distributor of cannabis products. All three individuals served as officers of CRC until February 2021, when Lawrence and Manek voted to remove Militello from her position, and as directors of CRC until March 2021, when Lawrence and Manek removed Militello from that position as well. In April 2021 Militello sued Lawrence, Manek and others, including Joel Athey, Lawrence's husband, in a multicount complaint alleging causes of action for breach of contract, breach of fiduciary duty, fraud and other torts.

In November 2021 Lawrence moved to disqualify Militello's counsel, Spencer Hosie and Hosie Rice LLP, on the ground Militello had impermissibly downloaded from Lawrence's CRC email account private communications between Lawrence and Athey, protected by the spousal communication privilege (Evid. Code, § 980), and provided them to her attorneys, who then used them in an attempt to obtain a receivership for CRC in a parallel proceeding. Militello opposed the motion, arguing in part Lawrence had no reasonable expectation her electronic communications with her husband were confidential because she knew Militello, as a director of CRC, had the right to review all communications on CRC's corporate network. Militello also argued disqualification is not appropriate when a lawyer has received the adverse party's privileged communications from his or her own client. The trial court granted the motion, finding that Militello had not carried her burden of establishing Lawrence had no reasonable expectation her communications with her husband would be private, and ordered the disqualification of Hosie and Hosie Rice.

We affirm.  The evidence before the trial court supported its finding that Lawrence reasonably expected her communications were, and would remain, confidential.  And while we acknowledge disqualification may not be an appropriate remedy when a client simply discusses with his or her lawyer improperly acquired privileged information, counsel's knowing use of the opposing side's privileged documents, however obtained, is a ground for disqualification.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *CRC's and Militello's Lawsuits*

Militello, Lawrence and Manek were business partners, owning, directly or indirectly, singly or in various combinations, several corporate entities forming a vertically integrated cannabis business.  All three were shareholders and directors of CRC, a licensed manufacturer and distributor of cannabis products.  Manek owned two dispensaries; Lawrence and Militello had long-term management contracts with the dispensaries with their income tied to store revenue.  Militello was the sole owner of Beaux Canna, which developed and marketed cosmetics containing CBD oil.

In September 2020 Militello, with the initial agreement of Lawrence and Manek, moved the email accounts for CRC and the partners' other businesses from Microsoft onto Google Workspace (then known as G Suite).  In a lawsuit CRC filed against Militello in Los Angeles County Superior Court on April 7, 2021 for breach of fiduciary duty and violation of the California Comprehensive Computer Data Access and Fraud Act (Pen. Code, § 502), *Cannaco Research Corporation v. Militello* (L.A.S.C. No. 21STCV13314) (CRC action), CRC alleged Militello had improperly interfered with CRC's computer systems and

3

operations. Specifically, CRC alleged Militello, without the knowledge or consent of the CRC board (that is, without informing Lawrence and Manek), set up G Suite, paid for by CRC, to host email accounts for Beaux Canna and assigned herself the exclusive role as super-administrator, which gave her control over all the accounts of the various businesses in the G Suite organizational structure. CRC further alleged Militello searched for and reviewed other individuals' emails, deleted entire email accounts, diverted CRC emails to alias accounts and blocked Lawrence and Manek's access to various electronic documents systems necessary for CRC to conduct its business. CRC sought a permanent injunction requiring Militello to restore administrative control over the G Suite to CRC and preventing her future access to the company's systems.

On April 29, 2021 Militello filed the complaint in the instant action, and on May 18, 2021 a first amended complaint, on behalf of herself and derivatively on behalf of CRC, naming as defendants Lawrence, Manek and various other entities that formed part of the former partners' integrated cannabis business, including cannabis dispensaries. Also named as defendants were Athey, who Militello alleged represented her during certain difficult contract negotiations with Lawrence and Manek, and Athey's law firm, Holmes, Taylor, Cowan & Jones LLP.[1] The first amended complaint alleged 22 causes of action (in 490

---

[1] Lawrence, Athey and Militello are active members of the California State Bar and apparently worked together at some point at DLA Piper, where Athey and Militello represented Manek. Militello alleged in her first amended complaint that Lawrence was her mentor when she was "a practicing corporate attorney at a large law firm."

4

paragraphs) including for breach of contract, breach of fiduciary duty and fraud.  In brief, Militello alleged Lawrence, with the cooperation of Manek, conspired with Athey to force Militello out of her position at CRC, as well as from various lucrative consulting agreements procured through Militello's efforts, to increase their share of the profits from the business and to shield the illicit accounting practices being used in the business.  On June 4, 2021 the trial court (Judge Young) denied Militello's application for a receivership for CRC.

On August 13, 2021 Militello filed a cross-complaint, and on September 1, 2021 an amended cross-complaint, in the CRC action against CRC, Lawrence and Manek, again asserting causes of action for breach of contract and breach of fiduciary duty, as she had in the instant action, and also alleging wrongful termination and whistleblower retaliation.  On September 28, 2021, now represented by Hosie Rice in both lawsuits, Militello filed a second request for appointment of a receiver, albeit in the CRC action (heard in the writs and receivers department by Judge Chalfant).  In support of the motion Spencer Hosie submitted a declaration that attached as exhibits copies of numerous electronic communications between Lawrence and Athey that Militello had obtained from Lawrence's email account on CRC's computer system and provided to her lawyers.  Both the motion for a receiver and Militello's declaration in support of it quoted extensively from those communications (sometimes referred to by the parties and trial court as "GChats").

The motion for appointment of a receiver was denied.  The court granted Lawrence's application to seal the electronic communications based upon the spousal communication privilege, but stated its ruling "does not mean Militello is

5

foreclosed from revisiting the privilege issues in future motions or at trial."

2. *The Motions To Disqualify Hosie Rice*

a. *The motion in the CRC action*

CRC, Lawrence and Manek moved to disqualify Spencer Hosie and Hosie Rice from representing Militello in the CRC action. The motion argued Hosie's and his firm's disqualification was required because the electronic communications between Lawrence and Athey, which Militello had downloaded, were protected by the spousal communication privilege; Militello did not have permission to access Lawrence's email account or to read her private communications with her husband; and, after being given the confidential communications by Militello, Hosie not only failed to inform Lawrence that he had them but also used them as the basis for renewing Militello's motion for a receivership.

The trial court (Judge Goorvitch) denied the motion. Although acknowledging the communications were privileged, as Judge Chalfant had ruled, subject only to possible application of the crime-fraud exception, the court concluded disqualification was not necessary because CRC did not demonstrate prejudice: "The Court reviewed the communications at issue and did not find any information that provides Militello's counsel a strategic advantage based upon having learned useful information about the issues in this litigation. CRC's motion speaks only generally about Militello's counsel having obtained such an advantage and does not identify any specific information that provides this advantage. This is especially true because this case relates only to CRC's claims that Militello unlawfully accessed the computer and deprived access to electronic and physical workspaces. The

6

Court dismissed the cross-complaint on October 29, 2021."[2]  The order denying the motion stated it applied only to the CRC action "and shall not preclude CRC from seeking the same relief in Case Number 21SMCV00789 [the case now before this court]."[3]

b.  *The motion in the case at bar*

Lawrence moved in the instant action to disqualify Hosie and Hosie Rice, asserting the same grounds (failure to disclose to Lawrence that counsel had received her presumptively privileged communications from Militello and the use of those privileged communications in the CRC action receivership motion) as had been advanced in the CRC action.  Militello filed an opposition, arguing Lawrence had no reasonable expectation her communications over the corporate network were private (that is, she knew Militello could access and review them); the communications were part of the scheme to defraud Militello by forcing her out of the parties' cannabis business and thus within the crime-fraud exception; disqualification was unwarranted

---

[2]  After the receivership motion was denied, the cross-defendants demurred to Militello's cross-complaint.  Militello dismissed all her causes of action except for wrongful termination against CRC.  The trial court sustained the demurrer to that remaining cross-claim, leaving only CRC's complaint against Militello in the CRC action.

[3]  In its order the court noted CRC's counsel had stated he did not intend to waive the privilege by referring to the communications in connection with the motion to disqualify and Militello's counsel confirmed he did not intend to argue waiver.  The court then found "no waiver of the marital privilege of Joel Athey and Ann Lawrence Athey based upon the proceedings in this matter, i.e., the arguments on this motion."

7

because counsel's access to the emails provided no strategic advantage in the litigation; and, finally, disqualification is never justified by virtue of a party disclosing confidential information to his or her own counsel.

Lawrence filed a reply memorandum and objected to portions of Hosie's declaration in opposition to the motion based on the spousal privilege and lack of authentication.

The trial court granted the motion and ordered disqualification of Hosie and his law firm.[4] The court first ruled Lawrence had presented sufficient evidence to apply the presumption the spousal communication privilege applied to her communications with Athey, referring to Lawrence's declaration describing the daily email exchange she had with her husband from her CRC email account and averring she considered the messages private and confidential and had not given Militello or anyone at Hosie Rice permission to access her account.

The court then found Militello had failed to carry her burden to establish the communications were not confidential. The court explained Militello had not presented evidence she accessed the electronic communications while she was still a director of CRC and, in any event, she was not authorized to do so under Corporations Code section 1602 unless acting in a fiduciary capacity, which she had not established. As for Militello's contention Lawrence had no reasonable expectation of privacy when sending emails over the CRC platform, the court found there was no evidence that CRC had a monitoring policy

---

[4] The court also ordered Militello and her counsel to destroy all privileged communications in their possession "[t]o ensure that this issue does not reoccur."

8

(whether through its governing bylaws or an employee handbook), that Lawrence had agreed to such a policy or that Lawrence had notice from a Google message warning of the accessibility of her email account to others at the company. Finally, the court found Militello had failed to make a prima facie showing the communications were made to enable the commission of a crime or fraud (and noted it was prohibited from reviewing the privileged communications themselves to evaluate this contention).

Emphasizing the litigation involved Militello's claim she was the victim of fraud perpetrated by Lawrence and others and Hosie had already attempted to use the emails to the disadvantage of Lawrence, the court found that possession and potential future exploitation of the communications would prejudice Lawrence and undermine the public's trust in the administration of justice. Then, pointing out that Militello was an attorney and should know that the communications between Lawrence and Athey were protected by the spousal communication privilege, the court rejected the argument that disclosure to one's own attorney of confidential information does not justify disqualification.[5]

---

[5] The trial court sustained 13 of 14 objections by Lawrence to exhibits attached to Hosie's declaration filed in opposition to Lawrence's motion "for lack of authentication and spousal privilege." Militello argues the exhibits were properly authenticated but does not address the court's second ground for sustaining the objections. (See *People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1237 ["[w]hen a trial court states multiple grounds for its ruling," the appellant must address each of them "because 'one good reason is sufficient to sustain the order from which the appeal was taken'"].) Nor does she explain how she

9

Militello, Hosie and Hosie Rice filed timely notices of appeal.[6]

**DISCUSSION**

1. *Standard of Review*

A trial court's decision to grant or deny a motion to disqualify counsel is generally reviewed for abuse of discretion. (*People v. Suff* (2014) 58 Cal.4th 1013, 1038; *In re Charlisse C.* (2008) 45 Cal.4th 145, 159; *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143 (*SpeeDee Oil*).) "As to disputed factual issues, a reviewing court's role is simply to determine whether substantial evidence supports the trial court's findings of fact . . . . As to the trial court's conclusions of law, however, review is de novo; a disposition that rests on an error of law constitutes an abuse of discretion." (*In re Charlisse C.*, at p. 159; see *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.) While the trial court's "'application of the law to the facts is reversible only if arbitrary and capricious'" (*In re Charlisse C.*, at p. 159; accord, *Doe v. Yim* (2020) 55 Cal.App.5th 573, 581), "where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law." (*SpeeDee Oil*, at

---

could properly use emails exchanged between Lawrence and Athey to argue the court erred in disqualifying Hosie and Hosie Rice.

[6]     "[T]he order disqualifying [counsel] is appealable." (*URS Corp. v. Atkinson/Walsh Joint Venture* (2017) 15 Cal.App.5th 872, 880; see *Meehan v. Hopps* (1955) 45 Cal.2d 213, 215-216.) "Disqualified attorneys themselves have standing to challenge orders disqualifying them." (*A.I. Credit Corp., Inc. v. Aguilar & Sebastinelli* (2003) 113 Cal.App.4th 1072, 1077.)

p. 1144; accord, *O'Gara Coach Co., LLC v. Ra* (2019) 30 Cal.App.5th 1115, 1124 (*O'Gara Coach*); *California Self-Insurers' Security Fund v. Superior Court* (2018) 19 Cal.App.5th 1065, 1071.)

When deciding a motion to disqualify counsel, "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." (*SpeeDee Oil, supra,* 20 Cal.4th at p. 1145; accord, *O'Gara Coach, supra,* 30 Cal.App.5th at p. 1124.) "[W]here an attorney's continued representation threatens an opposing litigant with cognizable injury or would undermine the integrity of the judicial process, the trial court may grant a motion for disqualification, regardless of whether a motion is brought by a present or former client of recused counsel." (*Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1205.)

2. *The Spousal Communication Privilege and the Presumption of Confidentiality*

Evidence Code section 980 provides, "Subject to Section 912 [concerning waiver] and except as otherwise provided in this article, a spouse . . . , whether or not a party, has a privilege during the marital or domestic partnership relationship and afterwards to refuse to disclose, and to prevent another from disclosing, a communication if he or she claims the privilege and the communication was made in confidence between him or her and the other spouse while they were spouses." As the Law Revision Commission Comments make clear, "The privilege may be asserted to prevent testimony by anyone, including eavesdroppers."

11

Evidence Code section 917, subdivision (a), states, "If a privilege is claimed on the ground that the matter sought to be disclosed is a communication made in confidence in the course of the . . . marital or domestic partnership, . . . the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish that the communication was not confidential."  (Accord, *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733 (*Costco*) [once the party claiming one of the communication privileges establishes facts necessary to support a prima facia claim of privilege, "the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply"]; *Doe v. Yim, supra*, 55 Cal.App.5th at p. 587.)  Evidence Code section 917, subdivision (b), further provides, "A communication between persons in a relationship listed in subdivision (a) does not lose its privileged character for the sole reason that it is communicated by electronic means or because persons involved in the delivery, facilitation, or storage of electronic communication may have access to the content of the communication."  Notwithstanding subdivision (b), presumptively confidential communications sent from and received on a company-owned computer will not be protected from disclosure as privileged if the computer-user had been "warned that it was to be used only for company business, that e-mails were not private, and that the company would randomly and periodically monitor its technology resources to ensure compliance with the policy." (*Holmes v. Petrovich Development Co., LLC* (2011) 191 Cal.App.4th 1047, 1068-1069.)

Subject to certain exceptions not applicable in this case, "the presiding officer may not require disclosure of information claimed to be privileged . . . in order to rule on the claim of privilege."  (Evid. Code, § 915, subd. (a); accord, *Costco*, *supra*, 47 Cal.4th at p. 739 ["Evidence Code section 915 prohibits a court from ordering in camera review of information claimed to be privileged in order to rule on the claim of privilege"]; cf. *id.* at pp. 738-739 ["nothing in Evidence Code section 915 prevents a party claiming a privilege from making an in camera disclosure of the content of a communication to respond to an argument or tentative decision that the communication is not privileged"].)

3. *Militello Failed To Carry Her Burden To Establish Lawrence's Communications with Athey Were Not Protected by the Spousal Communication Privilege*

The communications at issue are presumptively privileged under Evidence Code section 980.  In her declaration in support of the motion to disqualify Hosie Rice, Lawrence identified exhibits attached to Hosie's declaration in support of Militello's motion for appointment of a receiver in the CRC action as "written communications between Joel Athey, my husband, and me, and no one else.  The messages indicate they were between the account ann@crcdistro.com, which is my email account at CRC, and my husband's email account."  Lawrence declared she considered all the emails with her husband included with Militello's motion to be "private and confidential communications" and explained she had not given Militello or anyone at Hosie Rice permission to access her email account or any chat messages associated with that email account.

a. *Lawrence's reasonable expectation of privacy*

13

Militello attempted to overcome the presumed privileged nature of these communications, arguing Lawrence knew the communications platform she was using was not confidential and, therefore, Lawrence had no reasonable expectation of privacy. Militello pointed to Corporations Code section 1602, which authorizes a director to inspect all books and records of the corporation of which he or she is a director;[7] CRC's bylaws, which essentially repeat the language of Corporations Code section 1602;[8] and a message Google provided when CRC moved to G Suite that the domain administrator had access to all data.

The trial court found, notwithstanding these provisions, Militello had not carried her burden of establishing Lawrence had no reasonable expectation her communications with her husband would be private. On appeal Militello has not demonstrated the evidence compelled a finding in her favor on this issue as a matter of law. (See *Phipps v. Copeland Corp. LLC* (2021) 64 Cal.App.5th 319, 333 [Where, as here, "the trier of fact has expressly or implicitly concluded that the party with the

---

[7] Corporations Code section 1602 provides in part, "Every director shall have the absolute right at any reasonable time to inspect and copy all books, records and documents of every kind and to inspect the physical properties of the corporation of which such person is a director."

[8] Section 4 of the CRC bylaws provided, "Every director will have the absolute right at any reasonable time to inspect all books, records, and documents of every kind and the physical properties of the corporation and each of its subsidiary corporations. This inspection by a director may be made in person or by an agent or attorney, and right of inspection includes the right to copy and make extracts of documents."

14

burden of proof did not carry the burden and that party appeals, generally the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. Specifically, the question becomes whether the appellant's evidence was (1) uncontradicted and unimpeached and (2) of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding" (cleaned up)]; accord, *Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 734.)

As the trial court emphasized, Militello presented no evidence CRC had a policy of monitoring individual email accounts—there was no CRC company handbook with a policy prohibiting Lawrence from using her CRC email account for personal communications or indicating her account would be monitored to ensure compliance with that restriction—let alone that Lawrence had agreed to such a policy.[9] In addition, the Google welcome message concerning the domain administrator's ability to access data was not directed to Lawrence's email account, and there was no evidence she ever received it.[10]

As for Militello's right as a director to inspect corporate records, as set forth in Corporations Code section 1602 and CRC's

---

[9] A company handbook proffered by Militello, which contained a monitoring policy, was for one of the dispensaries, not CRC. Militello had elsewhere stated the dispensary was not affiliated with CRC.

[10] We disregard, as we must, Militello's quotation from a presumptively privileged email to support her claim Lawrence knew Militello was reading her communications. (See Evid. Code, § 915, subd. (a); *Costco, supra*, 47 Cal.4th at p. 740.)

bylaws, the trial court ruled Militello had failed to present evidence that she was still a director at the time she accessed Lawrence's email account (that is, before the board removed her on March 24, 2021) or that she was acting in good faith in her fiduciary capacity as a director when she did so. The trial court cited case law holding that current director status is required to pursue inspection rights and the inspection must be performed in furtherance of the director's fiduciary duties. Militello insists the court's analysis, even if correct in terms of her right to download the communications, failed to recognize that, because she could have accessed Lawrence's email account prior to March 24, 2021, Lawrence had no reasonable expectation of privacy as to these email communications, which were made prior to her removal as a director.

Militello is correct as to the proper time to evaluate whether Lawrence's expectation of privacy was reasonable. However, it is by no means clear a director's right to inspect corporate books and records includes the surreptitious review of another director's individual email account on the company's G Suite. (Cf. *Wolf v. CDS Devco* (2010) 185 Cal.App.4th 903, 919 [the statutory right of inspection is to be used only to aid the performance of the director's fiduciary duties].) CRC's bylaws do not define the pertinent terms, and neither the bylaws nor any other company document put Lawrence on notice her electronic communications with her husband through G Suite were not confidential.

Neither of the cases cited by Militello supports her assertion the general right to inspect corporate records, absent a specific policy concerning individual email accounts, defeated Lawrence's reasonable expectation her communications with her

16

husband would remain confidential.  As discussed, in *Holmes v. Petrovich Development Co., LLC*, *supra*, 191 Cal.App.4th 1047, the employee had been expressly advised communications made over her company computer were not private and would be monitored and had stated she was aware of, and agreed to, that policy.  (*Id.* at p. 1068.)  Similarly, in *United States v. Hamilton* (4th Cir. 2012) 701 F.3d 404 the employee (a teacher) had received and signed a policy stating users of the school's computer system had no expectation of privacy in their emails and that all information sent or stored on the system was subject to inspection and monitoring at any time.  (*Id.* at p. 408.)

b. *The crime-fraud exception*

Militello also contends Lawrence's communications with Athey fell within Evidence Code section 981's crime-fraud exception to the spousal communication privilege and argues, at the very least, she made a showing sufficient to warrant an in camera review by the trial court—without citation to any authority that would except a crime-fraud claim from the prohibition in Evidence Code section 915, subdivision (a), on examining the communication at issue to determine its privileged nature.[11]  In support Militello notes only that (1) Athey was

---

[11]    Evidence Code section 915 does identify in subdivisions (a) and (b) several types of privilege claims for which an in camera inspection of the material may be made, for example a claim under Evidence Code section 1060 regarding trade secrets.  The crime-fraud exception is not among them.  (See *State Farm Fire & Casualty Co. v. Superior Court* (1997) 54 Cal.App.4th 625, 645 ["[f]rom these enumerated exceptions to Evidence Code section 915, we conclude that the Legislature does not

serving as her lawyer as she negotiated contractual agreements with Lawrence and Manek in December 2020; (2) prior to and during those negotiations (and afterward, for that matter), Athey and Lawrence communicated with each other; (3) within weeks of signing the new agreements, Lawrence began her efforts to force Militello out of the company; and (4) Lawrence and Manek thereafter entered into a contract to sell CRC's real estate.

As stated in the Law Revision Commission Comments to Evidence Code section 981, the exception provided by the section "is quite limited.  It does not permit disclosure of communications that merely reveal a plan to commit a crime or fraud; it permits disclosure only of communications made to *enable* or *aid* anyone to commit or plan to commit a crime or fraud."  Nothing in the anodyne evidence presented by Militello—that Lawrence and Athey continued their usual practice of daily, or almost daily, electronic communications during the work day while Athey was purportedly representing Militello in her negotiations with his wife—reasonably supports an inference that the purpose of those communications was to enable or aid a fraud against Militello (even if we were to conclude Militello's evidence adequately made a prima facie showing of fraud).  Indeed, given the trial court's finding that Militello had failed to carry her burden of showing a connection between the communications and the fraud she alleged, we could reverse the court's ruling only if the evidence compelled a finding the communications were in aid of a fraud.  It does not.

---

contemplate disclosure of privileged material in ruling on the crime/fraud exception"].)

4. *The Trial Court Acted Within Its Discretion in Disqualifying Hosie and Hosie Rice*

Our colleagues in Division Four of this court explained in *Doe v. Yim*, *supra*, 55 Cal.App.5th 573, a case involving, in part, the potential misuse of confidential information protected by the spousal communication privilege, "The power to disqualify counsel is frequently exercised on a showing that disqualification is required under professional standards governing avoidance of potential adverse use of confidential information. Even in the absence of an official standard on point, counsel may be disqualified where counsel has obtained the secrets of an adverse party because the situation implicates the attorney's ethical duty to maintain the integrity of the judicial process." (*Id.* at p. 586, cleaned up.) We articulated the same principle in *O'Gara Coach*, *supra*, 30 Cal.App.5th at page 1129, "Richie, even though no longer an officer of O'Gara Coach, has no right to disclose information protected by [the lawyer-client] privilege without O'Gara Coach's consent. [Citations.] And now that Richie is a member of the California State Bar, O'Gara Coach is entitled to insist that he honor his ethical duty to maintain the integrity of the judicial process by refraining from representing former O'Gara Coach employees in litigation against O'Gara Coach that involve matters as to which he possesses confidential information." (See *Rico v. Mitsubishi Motors Corp.* (2007) 42 Cal.4th 807, 818 (*Rico*) ["'[a]n attorney has an obligation not only to protect his client's interests but also to respect the legitimate interests of fellow members of the bar, the judiciary, and the administration of justice'"].)

*Doe v. Yim*, *supra*, 55 Cal.App.5th 573 and *O'Gara Coach*, *supra*, 30 Cal.App.5th 1115 fully support the trial court's exercise

19

of its discretion to disqualify Hosie and Hosie Rice based on the lawyers' unauthorized possession and use in court filings of Lawrence's confidential communications with her husband.[12] Militello makes three arguments challenging that conclusion: Lawrence's disclosure of the contents of her emails was not inadvertent; the communications did not provide any strategic advantage to Militello, making disqualification of her counsel unduly punitive; and disqualification is not a proper response to a client's disclosure of an adverse party's confidential information

---

[12] As an additional ground for disqualifying Hosie and Hosie Rice, Lawrence cites case law holding a lawyer has an ethical obligation upon receiving another party's inadvertently produced attorney-client privileged materials to notify the party entitled to the privilege and to refrain from using the material until any issue of privilege has been resolved. (E.g., *Rico, supra*, 42 Cal.4th at pp. 810, 817-818; *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644, 656-657; see *McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1106.) Lawrence argues Hosie Rice's disqualification was justified, even if her communications with Athey are ultimately found not to be privileged, because Hosie made full use of presumptively privileged spousal communications without notifying her the firm had obtained her emails and first seeking to resolve the issue whether the communications were confidential or otherwise not properly shielded from disclosure. (See *Rico*, at p. 819 [disqualification affirmed where attorney "'not only failed to conduct himself as required under *State Fund*, [citation] but also acted unethically in making full use of the confidential document'"].) Because we hold the communications remain protected by the spousal communication privilege and Hosie Rice's disqualification was proper following its use of that material, we need not address this alternate argument.

20

to his or her own attorney. None of Militello's contentions has merit.

To the extent Militello's first argument—that Lawrence failed to prove disclosure of her communications with Athey was unintentional—is not simply a repackaged version of the contention Lawrence should have known Militello could monitor her CRC platform communications, it is belied by the record. In her declaration Lawrence confirmed she believed her communications with Athey were private and stated she had not authorized their disclosure. Even if Militello accessed and downloaded the emails believing she had a right to do so as a CRC director, the record establishes it was not done with Lawrence's actual knowledge or permission.

Militello's second argument is equally without merit. Hosie Rice made aggressive use of the Lawrence emails in its motion for appointment of a receiver in the CRC action and in both cases contended the emails provided evidence of a fraud perpetrated by Lawrence and Ashley that is the foundation for the instant lawsuit. In the opening page of her opposition to the motion to disqualify, for example, Militello asserted, "[T]hese communications were sent as an active part of acknowledged fraud; a fraud that continues to this day."

To be sure, as Militello points out, the court in the CRC action denied the motion for disqualification because it concluded the communications did not provide Militello a strategic advantage in that lawsuit. But the issues in Militello's affirmative lawsuit against Lawrence, Athey and others are very different from those necessary for her defense of the CRC action. And there is a very real potential that lawyers at Hosie Rice, having read the emails, as opposed to simply relying on

21

Militello's recollection of what they may have said, will be able to use that information throughout the litigation, for example, in drafting discovery requests and responses and preparing for trial, as our Division Four colleagues recognized was likely when affirming the similar disqualification order in *Doe v. Yim* based on counsel's improper access to information protected by the spousal communication privilege.  (See *Doe v. Yim*, *supra*, 55 Cal.App.5th at p. 588.)

Moreover, even if we were confident Hosie Rice would not once again attempt to use Lawrence's emails to its client's advantage, it was well within the trial court's discretion to disqualify Hosie and his law firm because, as the court wrote, given their past improper use of confidential information, allowing them to continue to represent Militello in this case "would negatively affect the public's trust in both the scrupulous administration of justice and the integrity of the bar."  That is the essence of the holdings in *Doe v. Yim* and *O'Gara Coach*.

Militello's final argument—disqualification is not appropriate when the lawyers receive the adverse party's privileged communications from their own client—finds some support in the case law, but does not justify reversal of the decision to disqualify Hosie and Hosie Rice under the circumstances here.  In *Roush v. Seagate Technology, LLC* (2007) 150 Cal.App.4th 210, for example, the court, before holding the moving party had not carried her burden of establishing any confidential information had been shared with opposing counsel, explained disqualification may be warranted when counsel has obtained the secrets of an adverse party other than through a prior representation "not because the attorney has a direct duty to protect the adverse party's confidences, but because the

situation implicates the attorney's ethical duty to maintain the integrity of the judicial process." (*Id.* at p. 219.) Nonetheless, the *Roush* court observed in dicta, "[W]here the attorney's client is the attorney's source of privileged information relating to the litigation, courts typically refuse to allow the disqualification, concluding that clients do not act inappropriately in providing information to their own attorney. 'Since the purpose of confidentiality is to promote full and open discussions between attorney and client [citation], it would be ironic to protect confidentiality by effectively barring from such discussions an adversary's confidences known to the client. A lay client should not be expected to make such distinctions in what can and cannot be told to the attorney at the risk of losing the attorney's services.' [Citation.] Further, in such situations, disqualification would do nothing to protect the attorney-client privilege because the client still has the information and may pass it on to new counsel, leaving the adversary in the same position." (*Id.* at pp. 219-220; see *Neal v. Health Net, Inc.* (2002) 100 Cal.App.4th 831, 843-844 [holding no confidential information had been disclosed, but stating in dicta, even if it had been, "[d]isclosure to one's own attorney of confidential information does not justify disqualification"].)[13]

In contrast to these general statements untethered to the specific issues decided by the *Roush* and *Neal* courts, in *Clark v. Superior Court* (2011) 196 Cal.App.4th 37 (*Clark*) the court of

---

[13] As the trial court noted in its ruling granting the motion to disqualify Hosie Rice, to the extent this analysis depends on the lack of sophistication of a lay client, it is inapplicable to Militello, who is an active member of the State Bar.

23

appeal denied a writ petition seeking to overturn the trial court's decision to disqualify counsel who received stolen attorney-client privileged documents from his client and affirmatively used information from the documents in a lawsuit against the client's former employer. (*Id.* at pp. 54-55.) Explaining its determination that disqualification was not an abuse of discretion, the court held, "On this record, a trier of fact could conclude [the disqualified lawyer's] continued representation of [the client] could trigger doubts over the integrity of the judicial process because whenever [the lawyer's] advocacy against [the former employer/adverse party] began to touch on matters contained in the privileged documents that [the lawyer] retained (for over nine months) and excessively reviewed, the inevitable questions about the sources of [the lawyer's] knowledge (even if [the lawyer] in fact obtained such knowledge from legitimate sources) could undermine the public trust and confidence in the integrity of the adjudicatory process." (*Id.* at p. 55.)

In *O'Gara Coach*, *supra*, 30 Cal.App.5th at page 1130 we noted, without attempting to resolve, the apparent conflict between the holding in *Clark* and the dicta in earlier cases stating disqualification was not appropriate when a client improperly disclosed confidential information to his or her own attorney. But we hinted at a resolution.

The issue in *O'Gara Coach* was whether Darren Richie's law firm, Richie Litigation, P.C., could represent a former senior executive of O'Gara Coach Company in litigation against O'Gara Coach given evidence that Richie, the former president and chief operating officer of O'Gara Coach, had been a client contact for outside counsel investigating charges of fraudulent conduct at the company and, as such, was privy to attorney-client privileged

24

information relevant to the litigation.  (*O'Gara Coach*, *supra*, 30 Cal.App.5th at p. 1119.)  Even though Richie left O'Gara Coach before becoming a member of the State Bar, we held his possession of O'Gara Coach's confidential information disqualified him from representing the former senior executive; and, because there was no showing Richie had been effectively screened from other members of his firm, the firm could not continue to represent the former executive.  (*Id.* at p. 1131.)  However, we suggested—expressly noting we were not deciding—it might be proper for Richie Litigation to represent Richie in his own litigation against O'Gara Coach.  (*Ibid.*)

Unlike in *Clark*, however, there was no suggestion Richie had taken with him privileged documents from O'Gara Coach.  That is the crucial difference, we believe, between *Clark* and the case at bar, on the one hand, and a broad reading of language in cases generally indicating disqualification is not appropriate when it is the lawyer's own client who provided the improperly acquired privileged information, on the other.[14]  Courts cannot

---

[14]  In *Roush v. Seagate Technology, LLC*, *supra*, 150 Cal.App.4th 210 the disclosure of allegedly confidential information apparently consisted only of discussions involving potential case strategies and evidence, rather than providing counsel with privileged documents.  (See *id.* at p. 221.)  Similarly, in *Neal v. Health Net, Inc.*, *supra*, 100 Cal.App.4th 831 the disclosures occurred during "discussions of an adversary's confidences known to the client," rather than through the sharing of privileged documents.  (*Id.* at p. 844.)

In contrast to the oral disclosures in these cases, in *Cooke v. Superior Court* (1978) 83 Cal.App.3d 582 the client in a dissolution proceeding had given her attorney copies of attorney-client privileged documents belonging to her husband that had

effectively police what a client, after reading or hearing another party's confidential communications, chooses to tell his or her lawyer. As the cases indicate, attempting to restrict oral disclosures of that sort risks undue interference with candid discussions between the client and counsel; and disqualification would, in any event, be an ineffective remedy because the client might provide the same information to new counsel. But it is an entirely different matter if the client improperly obtained (or maintained) possession of written or digital copies of an adverse party's confidential information and provided them to counsel for use in litigation. Insisting that counsel not read purloined documents any more closely than is necessary to determine if they are privileged, as described in *Rico*, *supra*, 42 Cal.4th at pages 810 and 818 and *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644, 656-657, and prohibiting their use if they

_____

been surreptitiously copied and delivered to the wife by her husband's butler. (*Id.* at p. 592.) The trial court prohibited the use of the documents in the dissolution proceedings but declined to disqualify the wife's counsel. The court of appeal denied both the wife's request for writ relief concerning her use of the documents and the husband's request for writ relief on the issue of disqualification. (*Ibid.*) But the court's disqualification ruling was based on its understanding that disqualification was never appropriate based on exposure to privileged information absent an attorney-client relationship between the party moving for disqualification and the attorney sought to be disqualified—not because it was the lawyer's own client who had provided the improperly acquired privileged information. (*Ibid.*) That view of the law, as we explained in *O'Gara Coach*, *supra*, 30 Cal.App.5th at page 1130, is inconsistent with the Supreme Court's decision in *Rico*, *supra*, 42 Cal.4th 807, as well as many subsequent decisions from the courts of appeal.

are, will not inhibit legitimate attorney-client conversations; and a client whose counsel is disqualified for defying such a rule is not likely to repeat the violation. On the other hand, as the trial court ruled here, to allow continued representation of a client after counsel has been provided with, and then used, improperly obtained confidential information would undermine the public's trust in the fair administration of justice and the integrity of the bar.

## DISPOSITION

The order disqualifying Militello's counsel Spencer Hosie and Hosie Rice is affirmed. Lawrence is to recover her costs on appeal.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.

27