Filed 1/19/24  University of San Francisco v. Community Initiatives CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| UNIVERSITY OF SAN FRANCISCO, <br>     Plaintiff and Appellant, <br> v. <br> COMMUNITY INITIATIVES, <br>     Defendant and Respondent. | A167142 <br><br> (City & County of San Francisco Super. Ct. No. CGC22597932) |

This appeal arises from successive lawsuits relating to administration of the San Francisco Teacher Residency Program (Residency program). Loran Simon, a former employee of the Residency program, filed two prior lawsuits based on allegations that appellant University of San Francisco (USF) and respondent Community Initiatives fraudulently obtained federal funding to administer the Residency program.  In the present action, USF seeks indemnity from Community Initiatives for damages it incurred in connection with the Simon litigation.  This appeal is from an order disqualifying Michael Vartain and Vartain Law Group (Vartain) from representing USF in the pending indemnity action due to Vartain's prior representation of Community Initiatives in the Simon lawsuits.  We affirm that order.

1

## BACKGROUND

### *The Prior Lawsuits*

#### *Simon's Complaints*

In November 2016, Simon filed a federal action against USF and Community Initiatives under qui tam provisions of the False Claims Act. At the time, Simon was Assistant Director of the Residency program, which he described as a training program for teachers to improve achievement of historically underserved students that was operated by five organizations: USF; Community Initiatives; the San Francisco Unified School District (SF Unified); the Stanford University Teacher Education Program (Stanford); and United Educators of San Francisco. According to his complaint, Simon was initially employed by USF in June 2014, and in September 2016 his employment was transferred to Community Initiatives, a fiscal sponsor that assisted with administration of the Residency program.

Simon alleged that during his tenure as Assistant Director of the Residency program, USF and Community Initiatives submitted fraudulent claims to obtain grant money from federal programs, including AmeriCorps (previously known as the Corporation for National and Community Services). According to the complaint, all teacher candidates who participated in the Residency program obtained an AmeriCorps stipend, as well as other financial benefits from their respective universities. Simon alleged that the defendants failed to "track" the time and effort of these AmeriCorps participants and instead used falsified timesheets to obtain federal funding.

In June 2019, while his federal case was pending, Simon filed a state court action seeking damages for wrongful termination, naming multiple defendants including USF, Community Initiatives, and Peter Williamson, a Stanford faculty member who served as Chairman of the Residency

2

program's Advisory Board. Simon alleged that on June 30, 2017, he was wrongfully terminated from his employment as Assistant Director of the Residency program in retaliation for engaging in protected activity, including contesting racial discrimination, and reporting violations of the state and federal False Claims Acts. Simon alleged that the defendants were all liable for his wrongful termination as they were his joint employers and acted together to terminate him.

### Arbitration Petitions In Simon's Wrongful Termination Case

On October 2, 2019, USF petitioned the superior court to compel arbitration and stay Simon's wrongful termination action. Vartain drafted and filed the petition on behalf of USF. USF sought to compel arbitration pursuant to a provision in its written employment agreement with Simon.

The following day, USF executed a Joint Defense and Confidentiality Agreement (JDA) with Community Initiatives and Peter Williamson. The stated purpose of the JDA was to "ensure that exchanges and disclosures of confidential, privileged, and otherwise protected information" among the parties for purposes of pursuing a petition for an order to arbitrate were not interpreted as a waiver of the confidential or privileged nature of the information that was disclosed. Michael Vartain signed the JDA on behalf of Vartain as attorneys for USF, and Stanford's Vice President and General Counsel, Debra Zumwalt, signed the JDA as attorney for Williamson and Community Initiatives.

The terms of the JDA were set forth in 24 numbered paragraphs, addressing issues such as the type of material covered by the agreement, and ongoing obligations of the parties and their counsel to protect the privileged nature of the shared material. Paragraph 11 addressed the subject of continued representation should a party to the JDA assert a claim against

another party in the wrongful termination case or separate litigation. In that event, the JDA states, "each attorney of any Party who has access to or receives any Joint Defense Material shared under [the JDA] shall remain nonetheless qualified to continue to represent his or her client in the defense or pursuit of the claim(s)." In paragraph 11, the parties also agreed to the following: "Any conflict of interest arising out of the sharing of Joint Defense Materials under this Agreement is waived. Any right of any Party to move to disqualify any attorney for any Party to this Agreement on the grounds that such attorney has received Joint Defense Materials shared under this Agreement is waived."

On October 4, 2019, Community Initiatives and Peter Williamson filed a petition for an order to arbitrate and stay Simon's wrongful termination complaint (the non-signatories' petition). The non-signatories' petition and supporting documents were signed by Vartain as attorneys for Community Initiatives and Williamson. Michael Vartain filed a supporting declaration, which stated that he was appearing on behalf of Community Initiatives and Williamson for the limited purpose of filing and arguing their arbitration petition. In a supporting memorandum, Vartain argued that USF's arbitration agreement encompassed Simon's entire complaint, that Simon was estopped from refusing to arbitrate his claims against Community Initiatives and other entity defendants, and that the arbitration agreement applied to Williamson and other individual defendants pursuant to principles of agency.

On November 1, 2019, the superior court held a hearing on both arbitration petitions. USF's petition was granted pursuant to an uncontested tentative ruling that Simon's broad arbitration agreement with USF applied to his employment law claims. Simon contested a tentative ruling to grant

4

the non-signatories' petition, but after the matter was argued, the court granted that petition as well.

### *Dismissals of Simon's Lawsuits*

The Simon lawsuits were both resolved in May 2020. On May 18, the United States government intervened in the qui tam action "for settlement purposes against defendant [USF]." During negotiations between the government and USF, Vartain requested that a contemplated release of Simon's qui tam claims also include Community Initiatives, and the government agreed to the request. On May 18, the United States and Simon filed a joint proposed dismissal of the qui tam action with prejudice. The order was filed May 21, confirming Simon's dismissal extended to all defendants. The United States dismissed Simon's claims with prejudice to the extent they were "brought against USF under the False Claims Act, arising from USF's status as the fiscal agent which applied AmeriCorps funds to support and administer the [Residency program] during the 2014, 2015, and 2016 grant years." The following week, on May 27, Simon dismissed his wrongful termination case, serving notice of the dismissal on Vartain as attorneys for USF, Community Initiatives, and Williamson.

### *The Current Indemnity Action*

In February 2022, USF, represented by Vartain, filed the underlying action for contractual and equitable indemnity and declaratory relief, seeking to recover more than $4.5 million as damages it incurred to settle the qui tam action. USF alleges that its liability in the Simon cases was based solely on conduct by the Residency program's manager, who was the employee and agent of SF Unified. In its original complaint, USF named SF Unified as the sole defendant, but its operative first amended complaint names Community Initiatives and Stanford as additional defendants. USF's pleaded theory is

5

that each defendant must indemnify USF in proportion to its relative fault relating to the fraudulent procurement of AmeriCorps funds because they were all USF's partners and comembers of the Residency program's Advisory Board.

In November 2022, Stanford filed its answer to USF's complaint along with a cross-complaint. Community Initiatives filed a demurrer, which was vigorously opposed and ultimately denied on December 22. On December 14, while the demurrer was still pending, Community Initiatives filed a motion to disqualify Vartain from representing USF in the present action. Community Initiatives argued that Vartain's previous attorney-client relationship with Community Initiatives in the Simon cases created a conflict of interest that Community Initiatives did not waive. Stanford filed a joinder in Community's Initiatives disqualification motion and USF filed vigorous opposition.

### The Disqualification Order

On January 18 and 20, 2023, the trial court held a hearing before taking the disqualification motion under submission. On January 23, the court disqualified Vartain from representing USF in the pending action, memorializing its findings in a six-page order.

The trial court's analysis of the disqualification motion was framed by a preliminary finding that Vartain represented Community Initiatives in Simon's wrongful termination case. The court emphasized that Vartain signed and filed Community Initiatives' successful petition to compel arbitration, supporting memorandum, and reply brief, and all these court filings identified Vartain as " 'Attorneys for Defendant Community Initiatives.' " The court made an additional finding that Vartain assisted Community Initiatives with " 'getting released' " from the qui tam case, which

6

was also brought by Simon and named Community Initiatives and USF as codefendants.

Turning to the merits of the motion, the court applied a " 'substantial relationship' " test, which courts use to evaluate alleged attorney conflicts that arise from successive representation of clients with adverse interests. (Citing, e.g., *City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 847 (*Cobra Solutions*).) Concluding that Community Initiatives made the requisite showing of a substantial relationship between Vartain's former representation of Community Initiatives and their current representation of USF, the court made two sets of material findings.

First, Vartain had a direct professional relationship with Community initiatives during the prior actions. This finding was based on Michael Vartain's personal involvement in successfully litigating Community Initiatives' arbitration petition, and the fact that the petition was the most important motion in the wrongful termination case because after that petition was granted " '[t]he case was over.' " Simon " 'never submitted the dispute to arbitrat[ion]' and instead dismissed it with prejudice." (Quoting Michael Vartain's declaration.) In addition, the court observed that after Vartain obtained a positive outcome for Community Initiatives in the employment termination case, they offered further assistance by helping to secure a release from liability for Community Initiatives in the federal qui tam action.

Second, the court found that the Simon cases and the pending indemnity action are linked by their subject matter, as they involve overlapping parties and issues. As the court explained, the wrongful termination case and USF's current indemnity action concern the same allegations of "wrongdoing" against Community Initiatives—that it played a

7

role in submitting falsified timesheets for AmeriCorps funding—which is the same conduct that led USF to settle Simon's qui tam action. After previously defending Community Initiatives from those allegations, Vartain was now attempting to prove wrongdoing by Community Initiatives, and, the court found, "information material to the former representation and assistance is also material to the subsequent representation."

The court found that because a substantial relationship exists between the former representation and the current case, "it is 'conclusively presumed that [the] attorney knows confidential information adverse to [his or her] former client.' " (Quoting *National Grange of Order of Patrons of Husbandry v. California Guild* (2019) 38 Cal.App.5th 706, 717 (*National Grange*).) Under these circumstances, the court concluded, the substantial relationship between Vartain's former representation of Community Initiatives and the subject matter of the current action mandates disqualifying Michael Vartain and his firm from representing USF in the pending case.

In reaching this disposition, the court rejected contentions by USF that Community Initiatives waived its right to seek disqualification of Vartain. Specifically, USF argued that Community Initiatives consented to Vartain's current representation of USF by signing the JDA in Simon's wrongful termination action. The court disagreed, finding that the JDA pertained to the sharing of information among codefendants, not to a waiver of future conflicts of interest. USF also argued that Community Initiatives was attempting to gain an unfair tactical advantage by bringing its motion after 21 months' delay and causing extreme prejudice to USF. The court found that "delay and any prejudice" in bringing the motion "were minimal," pointing out that the case began when Vartain sued SF Unified; that Community Initiative was later added as a defendant in the amended

8

complaint, which was not served until July 2022; discovery did not begin until November; and the disqualification motion was filed the following month.

## DISCUSSION

"The authority of a trial court 'to disqualify an attorney derives from the power inherent in every court "[t]o control in furtherance of justice, the conduct of its ministerial officers." ' " (*Cobra Solutions*, *supra*, 38 Cal.4th at p. 846.) Disqualification motions implicate conflicts between the client's right to counsel of choice and the need to maintain ethical standards of professional responsibility, but the " 'paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar.' " (*Ibid*.) We review the trial court's decision on a disqualification motion for abuse of discretion, applying the deferential substantial evidence test to any disputed findings of fact. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143.) "However, the trial court's discretion is limited by the applicable legal principles," and "a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion." (*Id*. at p. 1144.)

### I. Issues on Appeal

Attorney disqualification matters typically arise from one of two common factual scenarios: successive representations, where an attorney seeks to represent a client with interests that are potentially adverse to a former client; and concurrent representations, where an attorney seeks to simultaneously represent clients with potentially or actually adverse interests. (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283; *Antelope Valley Groundwater Cases* (2018) 30 Cal.App.5th 602, 617 (*Antelope Valley*).)

9

Courts have developed distinct disqualification standards to address each scenario. (*Flatt*, at p. 283.)

In this case, we review a disqualification order that precludes Vartain's successive representation of clients with adverse interests. "It is well established that an attorney, after severing his or her relationship with a client, 'may not do anything which will injuriously affect his former client in any matter in which he formerly represented him nor may he at any time use against his former client knowledge or information acquired by virtue of the previous relationship.' [Citations.] This prohibition is grounded in both the California State Bar Rules of Professional Conduct, former rule 3-310(E) in effect until November 1, 2018, and rule 1.9, effective November 1, 2018, and governing case law." (*O'Gara Coach Co.*, *LLC v. Ra* (2019) 30 Cal.App.5th 1115, 1124.)

The "enduring duty to preserve client confidences precludes an attorney from later agreeing to represent an adversary of the attorney's former client unless the former client provides an 'informed written consent' waiving the conflict." (*Cobra Solutions*, *supra*, 38 Cal.4th at p. 847, quoting Rules Prof. Conduct, former rule 3-310(E); see current rule 1.9 (citations to rules refer to the California State Bar Rules of Professional Conduct).)[1] "If the attorney fails to obtain such consent and undertakes to represent the adversary, the former client may disqualify the attorney by showing a ' "substantial relationship" ' between the subjects of the prior and current representations."

---

[1] In moving for Vartain's disqualification from this case, Community Initiatives relied specifically on rule 1.9(a), which states: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent."

(*Cobra Solutions*, at p. 847; see also *Victaulic Co. v. American Home Assurance Co.* (2022) 80 Cal.App.5th 485, 506 (*Victaulic*).) "When a substantial relationship between the two representations is established, the attorney is automatically disqualified from representing the second client." (*Cobra Solutions*, at p. 847.)

On appeal, USF implicitly concedes that Community Initiatives is Vartain's former client. But it contends the trial court abused its discretion by disqualifying Vartain because (1) there is no substantial relationship between the previous representation and the present action, and (2) Community Initiatives waived Vartain's conflict of interest. We reject both arguments.

## II. Substantial Relationship Analysis

In *Cobra Solutions*, *supra*, 38 Cal.4th 847, the California Supreme Court affirmed that the substantial relationship test should be used to evaluate disqualification issues in successive representation cases and summarized the key features of this inquiry. The court "must first determine whether the attorney had a direct professional relationship with the former client in which the attorney personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation. [Citation.] If the former representation involved such a direct relationship with the client, the former client need not prove that the attorney possesses actual confidential information. [Citation.] Instead, the attorney is presumed to possess confidential information if the subject of the prior representation put the attorney in a position in which confidences material to the current representation would normally have been imparted to counsel." (*Id.* at p. 847; see also rule 1.9, comment 3 [two matters are

11

substantially related for purposes of this rule if they involve a substantial risk of a violation of a duty owed to the former client].)

"When the attorney's contact with the prior client was not direct, then the court examines both the attorney's relationship to the prior client and the relationship between the prior and the present representation. If the subjects of the prior representation are such as to 'make it likely the attorney acquired confidential information' that is relevant and material to the present representation, then the two representations are substantially related." (*Cobra Solutions*, *supra*, 38 Cal.4th at p. 847.)

We conclude that the trial court correctly applied the principles set forth in *Cobra Solutions*, and its findings are supported by substantial evidence.[2]

The finding of a direct professional relationship between Vartain and Community Initiatives is supported by Michael Vartain's personal appearance on behalf of Community Initiatives in the wrongful termination case, and the substantive legal services Vartain rendered to successfully litigate the non-signatories' arbitration petition. USF contends Vartain's prior representation of Community Initiatives was indirect and insubstantial because it was a limited appearance based on work Vartain had already put into preparing USF's arbitration petition. In fact, the record shows that the two arbitration petitions presented distinct legal issues; USF's petition was granted pursuant to an arbitration agreement, while the non-signatories' petition was granted pursuant to principles of agency and estoppel. Moreover, the minute order from the hearing on the petitions reflects that

---

[2] Although the trial court expressly relied on *Cobra Solutions* in reaching its conclusions, the case is not even mentioned in the appellate briefs that Vartain prepared and filed on behalf of USF.

USF's petition was unopposed, while Community Initiatives' petition was contested. Beyond that, as Michael Vartain conceded below, the non-signatories' arbitration petition was dispositive, leading directly to dismissal of the wrongful termination action.

USF argues that Michael Vartain's declaration conclusively shows there was no direct prior relationship with Community Initiatives because Mr. Vartain's only contact with Community Initiatives occurred prior to the arbitration hearing, when he was briefly introduced to Community Initiatives Vice President, David McGee. We are unpersuaded by this argument, which is premised on an untenably narrow conception of the word "direct." McGee, who also filed a declaration in the lower court, recalled exchanging an email with Michael Vartain and also having an in-person discussion with him about Vartain's representation of Community Initiatives when they met before the hearing. Moreover, Michael Vartain acknowledged that he worked directly with attorneys from Stanford's General Counsel office to draft the non-signatories' arbitration petition. USF fails to diminish Vartain's role by pointing out that Stanford's General Counsel also represented Community Initiatives. Vartain's collaboration with other lawyers who also represented their client is additional evidence of Vartain's direct representation of Community Initiatives in the wrongful termination case.

Substantial evidence also supports the trial court's finding that the legal services Vartain provided during their prior representation of Community Initiatives involved a legal issue that is substantially related to the legal issue in the pending action. Indeed, a pivotal issue in the wrongful termination case underlies this indemnity action—whether Community Initiatives is liable for problems in the administration of the Residency program, including the submission of false claims for AmeriCorps funding,

13

and the alleged retaliatory discharge of Simon for reporting this misconduct. After previously defending Community Initiatives against these allegations, Vartain now seeks to change sides and pursue those same allegations of wrongdoing against Community Initiatives.

In its reply brief, USF posits that these two matters are not sufficiently related to satisfy the substantial relationship test. We disagree. In the wrongful termination action, Simon's claims against Community Initiatives were premised on agency allegations, including that Community Initiatives became his joint employer in October 2016, and that Community Initiatives conspired with USF to wrongfully terminate him in 2017 in retaliation for engaging in protected activity.[3] Simon's allegedly protected activity included reporting violations of the False Claims Act, which was the same conduct at issue in Simon's qui tam case, the settlement of which gave rise to USF's pending indemnity claims against Community Initiatives.

USF takes the position that the substantive nature of the wrongful termination case is irrelevant since Vartain's representation of Community Initiatives was limited to the petition to arbitrate. To begin with, the record does *not* show that Vartain and Community Initiatives agreed to a limited scope representation. USF acknowledged at oral argument before this court that Vartain did not file a form CIV-150 Notice of Limited Scope Representation. (See Cal. Rules of Court, rule 3.36.) And the declaration Michael Vartain filed in the wrongful termination case stated that he was appearing in court on behalf of the non-signatories' for a limited purpose but did not address the nature or scope of Vartain's agreement to represent

---

[3] According to USF, Simon's "accusation of whistleblower retaliation was specifically aimed at USF and not [Community Initiatives]." Not so. Every cause of action alleged against USF in the wrongful termination case was also alleged against Community Initiatives.

14

Community Initiatives. In any event, USF overlooks that the grounds for the non-signatories' arbitration petition were the very agency allegations upon which Simon sought to hold Community Initiatives jointly liable for wrongful termination in his employment case and for violating the False Claims Act in the federal qui tam case. This factor connects not only Simon's two cases, but the pending action in which USF seeks indemnity from Community Initiatives. Only this time, Vartain is not defending Community Initiatives against allegations of joint misconduct but attempting to hold it liable for that precise reason.

Taking a different tack, USF argues that the trial court abused its discretion by finding a substantial relationship between the qui tam action and the current action despite the fact that Vartain did not represent Community Initiatives in the qui tam action. This argument misconstrues the trial court's ruling, which did not parse out the qui tam case as an independent basis for disqualification. Instead, the court found evidentiary support for Community Initiative's argument in the fact that after Vartain appeared in court as Community Initiative's lawyer in the wrongful termination case, they provided additional assistance to Community Initiatives by obtaining its release in the qui tam case. This evidence reinforces that the two Simon cases and the present indemnity action are interrelated, and we find no abuse of discretion in the court's taking account of this fact.

Attempting to shore up its sufficiency of the evidence challenge, USF contends that Community Initiatives failed to carry its burden of proof because there is no evidence that Vartain actually obtained relevant confidential information about Community Initiatives. However, no such showing is required when, as here, a substantial relationship exists between

15

the former and current representation. (See e.g., *National Grange, supra*, 38 Cal.App.5th at p. 717; *Henriksen v. Great American Savings & Loan* (1992) 11 Cal.App.4th 109, 114.) "If the former client establishes the existence of a substantial relationship between the two representations the court will conclusively presume that the attorney possesses confidential information adverse to the former client and order disqualification." (*Henriksen*, at p. 114.) Indeed, "where the lawyer was personally involved in providing legal advice and services to the former client—then it must be presumed that confidential information has passed to the attorney and there cannot be any delving into the specifics of the communications between the attorney and the former client in an effort to show that the attorney did or did not receive confidential information during the course of that relationship." (*Jessen v. Hartford Casualty Ins. Co.* (2003) 111 Cal.App.4th 698, 709 (*Jessen*).)

Insisting that Vartain's prior relationship with Community Initiatives does not give rise to a presumption that confidences were shared, USF mistakenly relies on *Victaulic, supra*, 80 Cal.App.5th 485. In that protracted insurance coverage litigation, the defendants filed a motion to disqualify the plaintiff's law firm on the ground that two lawyers who recently joined the firm had—several years earlier—done work for the claims-handling arm of the defendants' parent company. (*Id.* at p. 491.) An order denying disqualification was affirmed on appeal pursuant to a detailed evidentiary analysis that we need not recount here. Suffice it to say, both the trial and appellate court agreed that the defendants failed to prove that the two attorneys in question had a direct personal relationship with them, or even that a prior attorney-client relationship existed. (*Id.* at pp. 501–502 & 510.) Without that showing, there was no presumption the attorneys possessed confidential information. (*Id.* at p. 502; see also *Cobra Solutions, supra*, 38

16

Cal.4th at p. 847.) For this reason, the *Victaulic* court also considered whether other circumstances showed that it was likely the attorneys acquired confidential information that was relevant and material to the current matter, and again agreed with the trial court that the defendants failed to make that showing. (*Victaulic*, at pp. 511–514; see pp. 502–503.)

In contrast to *Victaulic*, in the present case we review an order granting disqualification, and because the trial court's findings are supported by substantial evidence, USF's heavy reliance on *Victaulic* is misplaced. Unlike that case, here a closer consideration of the nature of the prior relationship was unnecessary once Community Services carried its burden of showing that Vartain had a direct professional relationship with Community Services and personally provided legal advice and services in a representation that is substantially related to the present action. As the trial court found, these facts give rise to a presumption Vartain possesses confidential information, without the need for further proof that material confidential information was likely conveyed. (*Cobra Solutions*, *supra*, 38 Cal.4th at p. 847; *Jessen*, *supra*, 111 Cal.App.4th at p. 709.)

## III. Waiver Analysis

"Not all conflicts of interest require disqualification. In some situations, the attorney may still represent the client if the client's consent is obtained. [Citations.] 'Giving effect to a client's consent to a conflicting representation might rest either on the ground of contract freedom or on the related ground of personal autonomy of a client to choose whatever champion the client feels is best suited to vindicate the client's legal entitlements.' " (*Zador Corp. v. Kwan* (1995) 31 Cal.App.4th 1285, 1295.)

Under the circumstances presented here, involving successive representation of clients with adverse interests, Vartain may not represent

17

USF in this action that is substantially related to its prior representation of Community Initiatives without obtaining informed written consent waiving the conflict. (*Cobra Solutions*, *supra*, 38 Cal.4th at p. 847; rule 1.9(a).) USF argues that Vartain did obtain the requisite consent from Community Initiatives, and the trial court abused its discretion by finding otherwise. We disagree.

USF bases its claim of error on the JDA that was executed in the wrongful termination case. As discussed in our background summary, the JDA is an agreement to share defense materials *without* waiving privileges applicable to those materials. The only attorney conflict that was waived in the JDA is the conflict arising from access to joint defense materials that were shared pursuant to that agreement. As the trial court found, the JDA does not address the type of conflict that arose when Vartain filed USF's indemnity complaint against their former client. USF's contrary view is not supported by the language of the JDA or the factual circumstances. Indeed, it appears that when the JDA was executed by the parties' counsel on October 3, 2019, Vartain did not have an attorney-client relationship with Community Initiatives. However, in the ensuing weeks and months, Vartain appeared in court on behalf of Community Initiatives and provided additional assistance in the related qui tam case. Now, more than two years later, Vartain seeks to sue its former client on behalf of USF. The JDA does not expressly or implicitly address Vartain's current conflict of interest. On its face, the JDA is not informed written consent to Vartain's current representation of an adversary of their former client.

USF argues that the JDA should be construed as a waiver of Vartain's current conflict because it shows that the parties in the wrongful termination case did not have any expectation of confidentiality with respect to material

18

they exchanged under the JDA. This logic is flawed; the fact that USF and Community Initiatives agreed to share discrete information in the prior litigation does mean there was a blanket waiver of attorney-client confidentiality. By signing the JDA, the parties agreed expressly to waive one specific right: to bring a disqualification motion based on the fact that they shared defense materials. Evidence of that narrowly drawn waiver cuts against USF's theory here that all of Vartain's conflicts of interest were waived by signing the JDA.

USF's other arguments pertaining to the JDA lack factual and legal support. For example, USF assumes that the trial court failed to consider evidence that the JDA was drafted by Stanford's general counsel, pointing out that ambiguities in a contract must be construed against the drafter. But USF fails to identify ambiguous language in the JDA. Relatedly, USF intimates that the JDA contains a latent ambiguity, requiring consideration of extrinsic evidence to determine whether the agreement is a broad waiver of any potential conflict relating to Vartain's representation of USF. (Citing *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 114.) However, extrinsic evidence is admissible only when it is relevant to support a reasonable interpretation of the contract. (*Brown v. Goldstien* (2019) 34 Cal.App.5th 418, 432–433.) USF's extrinsic evidence consists of statements in Michael Vartain's declaration to the effect that USF was unwilling to consent to Vartain's concurrent representation of Community Initiatives in the wrongful termination case unless the JDA contained a conflict of interest waiver.[4] This evidence pertains to USF's motivation for

---

[4] Similar statements appear in a declaration by USF's general counsel, Donna Davis. Davis states that she "allowed" Vartain to represent Community Initiatives as a "courtesy to Stanford" because she viewed Stanford's and Community Initiatives' signatures on the JDA as an

19

waiving Vartain's separate conflict arising out of Vartain's concurrent representation of clients with potentially adverse interests in the wrongful termination case. It does not support USF's theory here that the JDA can be construed reasonably as a blanket waiver of all future attorney conflicts in cases involving these parties.

Shifting focus, USF appears to contend that Community Initiatives impliedly consented to Vartain's adverse representation of USF by agreeing to present a joint defense with USF in the wrongful termination action. We have a few problems with this argument, beginning with *Cobra Solutions*, *supra*, 38 Cal.4th at p. 847, which states that the former client's informed written consent is required to waive a conflict arising out of successive representation of the former client's adversary in a substantially related matter. We note, however, that the disputed issue in *Cobra Solutions* pertained to vicarious disqualification; whether a city attorney's admitted conflict of interest required disqualification of the entire government office. (*Id*. at p. 848.) Because there was no contention in *Cobra Solutions* that the former clients consented to the conflict, that decision does not squarely hold that informed consent to an otherwise disqualifying attorney conflict must be in writing.

USF cites *Antelope Valley*, *supra*, 30 Cal.App.5th at pp. 619–624, for the proposition that consent to an attorney's conflict of interest can be implied. We note that the conflict of interest analyzed in *Antelope Valley* arose from an attorney's concurrent representation of clients with adverse interests (*id*. at pp. 616–617), but even if the same analysis were to apply in cases of successive representation (see *id*. at pp. 619, 621–625), we conclude

---

assurance that those parties would have no basis for disqualifying Vartain from representing USF.

that *Antelope Valley* does not support USF's argument under the facts presented here.

　　*Antelope Valley* involved multiple consolidated lawsuits arising from a protracted dispute about water rights. (*Antelope Valley*, *supra*, 30 Cal.App.5th at p. 608.) The law firm Best Best & Krieger, LLP (BB&K) undertook to represent a water district defendant in the consolidated proceedings, while it was simultaneously representing a water contractor in other matters. (*Id*. at pp. 609–610.) The water contractor also had an interest in the consolidated proceedings, and, at some point, it was named as a cross-defendant by an unrelated party. The water contractor retained the Brunick law firm to represent it in the consolidated proceedings, while continuing to use BB&K to represent it in other matters. (*Id*. at p. 611.) More than 10 years later, the water contractor terminated its relationship with BB&K and filed a motion to disqualify BB&K from continuing to represent the water district in the consolidated proceedings, claiming for the first time that the concurrent representation was a disqualifying conflict of interest. (*Id*. at p. 613.) The trial court denied the motion, finding that the water contractor impliedly consented to BB&K's concurrent representation of the water district by accepting BB&K's advice on other matters for more than 10 years without ever objecting to the concurrent representation. (*Id*. at pp. 613–614.)

　　On appeal, the *Antelope Valley* court affirmed the order denying the disqualification motion on two independent grounds. First, the finding that the water contractor impliedly consented to the concurrent representations was supported by substantial evidence. (*Id*. at pp. 618 & 625.) Rejecting a contention that the absence of the water contractor's written consent was dispositive, the *Antelope Valley* court held that "a trial court may deny a

21

disqualification motion when it finds the moving party by its conduct gave knowing and informed consent to the concurrent representation of themselves and another client." (*Id*. at p. 625.) Alternatively, the court found that even if implied consent was insufficient, the water contractor waived its right to bring a disqualification motion by failing to bring the motion within a reasonable time. (*Id*. at pp. 625–626.)

Like the *Antelope Valley* court, we affirm a trial court ruling on a disqualification matter because it is supported by substantial evidence. If we were to assume, as the *Antelope Valley* court did, that informed consent to an otherwise disqualifying conflict of interest can be implied from conduct, that factor would not alter our conclusion that the disqualification order is supported by substantial evidence. In contrast to the situation in *Antelope Valley*, in this case there is no concrete evidence that the party asserting a conflict of interest knowingly participated in the arrangement for years without objection. USF's theory that Community Initiatives impliedly consented to Vartain's conflict is based on the same evidence that USF uses to argue express consent, i.e., the fact that Community Initiatives signed the JDA. As explained, the language of the JDA and the factual circumstances of this case support finding that the JDA was an agreement to share defense evidence, not to waive all potential future attorney conflicts of interest.

USF contends that if Community Initiatives did not impliedly consent to Vartain's conflict, it impliedly waived its right to bring a motion to disqualify Vartain. " '[A]ttorney disqualification can be impliedly waived by failing to bring the motion in a timely manner.' [Citation.] As explained by one court, 'it is not in the interests of justice to make the "substantial relationship" rule so unyielding as to permit the former client to inexcusably postpone objections without penalty. Therefore, a narrow exception should

22

apply if the present client, by way of opposition, offers prima facie evidence of an unreasonable delay by the former client in making the motion and resulting prejudice to the current client.' [Citation.] To operate as a waiver, however, the 'delay [and] . . . the prejudice to the opponent must be extreme.' [Citations.] If the opposing party makes a prima facie showing of extreme delay and prejudice, the burden then shifts to the moving party to justify the delay." (*Fiduciary Trust Internat. of California v. Superior Court* (2013) 218 Cal.App.4th 465, 490.)

Consistent with these principles, the *Antelope Valley* court found "ample justification" for finding that the water contractor's delay in bringing a disqualification motion was unreasonable and extremely prejudicial. (*Antelope Valley*, *supra*, 30 Cal.App.5th at p. 626.) The court based this conclusion on evidence that the water contractor waited 10 years to bring the motion while reaping "substantial benefits" from BB&K's representation of the water district during that same period; that the water district would suffer substantial financial cost if required to replace BB&K; and that the courts and other interested parties would also be harmed by BB&K's removal from the ongoing litigation. (*Id.* at p. 626.)

In contrast to *Antelope Valley*, in this case USF failed to make a prima facie showing of unreasonable delay or extreme prejudice. Again, it relies primarily on Michael Vartain's declaration. Mr. Vartain states that for several months before and after the current lawsuit was filed, he spent considerable time attempting to negotiate a settlement with the attorneys representing Stanford and Community Initiatives, and nobody complained about a conflict of interest. In our view, the time Vartain spent on settlement efforts on behalf of USF is not evidence that Community Initiatives engaged in unreasonable delay. The record contains ample evidence that once Vartain

23

made the decision to sue its former client, Community Initiatives acted promptly to address Vartain's conflict. Community Initiatives was served with process in July 2022 and filed its motion to disqualify Vartain five months later.

Regarding prejudice, Mr. Vartain posits that no other attorney can adequately replace him in the pending indemnity action. He states, for example, that he represents USF in most if not all litigation that is filed in San Francisco, that he has "thousands of attorney hours of experience working on this lawsuit," and that his institutional knowledge of USF is "not replaceable." This glowing review is corroborated by USF's general counsel, but it is not evidence of prejudice attributable to Community Initiatives. Despite Vartain's close relationship with USF, they elected to represent Community Initiatives in a prior, substantially related matter. Promptly after Vartain's decision to sue Community Initiatives on behalf of USF in the pending action, Community Initiatives asserted the conflict and filed a disqualification motion. Thus, it neither consented to nor waived its right to object to Vartain's current conflict of interest.

## DISPOSITION

The order is affirmed. Costs to respondent.

TUCHER, P.J.

WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.

*University of San Francisco v. Community Initiatives* (A167142)

24